SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Naquan O'Neil, a/k/a Naquan O'Neal (A-68-12) (072072)**

**Argued February 4, 2014 -- Decided October 6, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers whether appellate counsel's failure to raise on direct appeal an erroneous jury instruction that denied defendant a valid defense to the charges of aggravated manslaughter and manslaughter constituted ineffective assistance of counsel.

Early on the morning of March 18, 2001, defendant Naquan O'Neil fatally shot Hassan Hardy. In the days prior to the shooting, defendant and Hardy were involved in several verbal and physical altercations. On one occasion, Hardy slammed a car door into defendant and defendant punched Hardy. Later the same evening, Hardy accosted defendant, shot four shots in the direction of his legs without hitting him, and struck defendant in the head with the gun. Defendant then retrieved a gun from a nearby known gun stash and shot out the windows of Hardy's car. A witness observed the shooting on the morning of March 18, testifying that she saw defendant approach Hardy, ask him if he liked playing with guns, and shoot him. Although the witness did not see Hardy pull a gun on defendant, police recovered a loaded and cocked gun that another man had removed from Hardy's clothing following the shooting. Defendant was arrested and charged with first-degree murder.

At trial, defendant testified that his earlier altercations with Hardy prompted him to carry a .380 caliber handgun for protection. He claimed that he shot Hardy because Hardy had pointed a gun at him and he feared he would be shot. At the jury-charge conference, the prosecutor and defense counsel agreed that self-defense applied only to the murder charge but not to the lesser-included charges of aggravated manslaughter and manslaughter, which are predicated on reckless conduct. The court provided the jury with a self-defense instruction on the murder charge, advising that the defense was not applicable to the lesser-included charges. The jury acquitted defendant of murder, but convicted him of first-degree aggravated manslaughter.

Defendant appealed, but did not challenge the self-defense charge. The case was submitted to the Appellate Division on March 21, 2007. Eight days later, another Appellate Division panel held that self-defense is applicable to a charge of manslaughter. State v. Rodriguez, 392 N.J. Super. 101, 113 (App. Div. 2007), aff'd, 195 N.J. 165 (2008). Defendant's appellate counsel did not raise the validity of the self-defense charge with the panel in this case either after the Rodriguez decision was rendered or after this Court granted certification on July 6, 2007. State v. Rodriguez, 192 N.J. 292 (2007). On August 10, 2007, the panel in defendant's case affirmed his conviction.

In May 2008, defendant filed a petition for post-conviction relief (PCR), claiming that his trial and appellate attorneys provided ineffective assistance of counsel by failing to raise self-defense as a defense to aggravated manslaughter and manslaughter. The PCR court denied the petition, finding that defendant should have challenged the jury charge on direct appeal and that appellate counsel did not act unreasonably in relying on State v. Moore, 158 N.J. 292, 303 (1999), which included language stating that justification defenses are unavailable where recklessness or negligence establish the requisite mental element of a charged crime. Although this Court had subsequently affirmed the Appellate Division decision in Rodriguez, referring to its earlier assertion in Moore as "mistaken," the PCR court maintained that appellate counsel could not be expected to have anticipated that decision. Defendant appealed, and the Appellate Division affirmed, reasoning that the governing law prior to this Court's decision in Rodriguez was ambiguous because of the language in Moore. Thus, the panel determined that defendant's appellate counsel did not have a professional or constitutional obligation to raise self-defense as a defense to manslaughter. The Court granted defendant's petition for certification. 214 N.J. 119 (2013).

**HELD:** Defendant's appellate counsel's failure to bring the Rodriguez decisions to the attention of the Appellate Division panel that heard this case rendered counsel's performance ineffective under both our Federal and State Constitutions.

1. A PCR proceeding is a defendant's last opportunity to challenge the fairness of a criminal verdict in the state system, and ineffective assistance of counsel claims are particularly suited for post-conviction review. The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee an accused the right to effective assistance of counsel in criminal proceedings, including direct appeal. To establish a valid claim under both the Federal and State Constitutions, a defendant must satisfy a two-pronged standard: (1) counsel's errors were so egregious, falling below an objective standard of reasonableness, that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. The prejudice standard is met if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (pp. 13-16)

2. Here, one fair inference is that the defense succeeded, given the acquittal on murder. However, defendant had no legitimate defense to aggravated manslaughter or manslaughter in light of the court's charge that self-defense could not exonerate him of those crimes. In Rodriguez, supra, the Court affirmed a published Appellate Division decision, which held that "a valid claim of self-defense -- when not disproved by the State -- exonerates a defendant of reckless manslaughter." 195 N.J. at 169. That Appellate Division decision was decided eight days after the appeal in this case was submitted to a panel and more than four months before the panel rendered its decision, and was an expression of the law in the State at that time. It directly benefitted defendant, signaling that he had been denied a legitimate defense at his trial. However, defendant's appellate counsel failed to raise that meritorious issue before the panel in this case. Nor did counsel raise the issue following this Court's grant of certification in Rodriguez. Although appellate counsel is not obligated to endlessly advocate for his or her client, he or she should bring to the court's attention controlling law that will vindicate the client's cause. (pp. 16-18)

3. The Court's Rodriguez decision, which was rendered after defendant's direct appeal had run its course, was not a novel interpretation of the law of self-defense. Rather, the Court's conclusion that "a person who kills in the honest and reasonable belief that the protection of his own life requires the use of deadly force does not kill recklessly," was based on the plain language of the relevant statutory provisions. Rodriguez, supra, 195 N.J. at 171-73. Specifically, N.J.S.A. 2C:3-4(b)(2) provides, in part, that deadly force is justified where a defendant "reasonably believes" it is necessary to protect himself against death or serious bodily harm. A "reasonable belief" is defined as one "which does not make the actor reckless or criminally negligent." N.J.S.A. 2C:1-14(j). Accordingly, the plain language of the Code of Criminal Justice indicates that self-defense is a defense to aggravated and reckless manslaughter, a conclusion which has been reflected in case law since the Code's inception. In light of this history, the Rodriguez Court viewed the broadly stated dicta in Moore, supra, 158 N.J. at 303 -- that justification defenses are unavailable where recklessness or negligence suffice to establish the requisite mental element of a charged crime -- as a "mistaken assertion" limited to the facts of that case. Rodriguez, supra, 195 N.J. at 173-74. Additionally, widely-read commentary existing at the time of defendant's appeal warned that Moore should not be read to indicate that the justification of self-defense is unavailable against charges based on recklessness. (pp. 18-21)

4. Addressing the narrow question of whether defendant was denied the effective assistance of appellate counsel, the Court concludes that counsel's representation fell below the objective standard of reasonableness. Counsel should have brought to the attention of the appellate panel in defendant's case the Appellate Division decision in Rodriguez, which, at the time of defendant's appeal, was controlling law and clearly expressed that defendant was denied a valid defense to the lesser-included offenses of aggravated manslaughter and manslaughter. Counsel is expected to be aware of important and relevant changes in the law. Defendant was clearly prejudiced by counsel's failure to raise the self-defense issue since, but for this error, there is a reasonable probability that the panel deciding defendant's case would have applied the published holding of its sister panel and reversed defendant's aggravated manslaughter conviction. Similarly, there is a reasonable probability that, had the jury been properly instructed, the outcome of the trial would have been different. Since the trial court's erroneous jury instruction undermines confidence in the verdict, remand for a new trial is required. (pp. 21-24)

The judgment of the Appellate Division is **REVERSED**, defendant's aggravated-manslaughter conviction is **VACATED**, and the matter is **REMANDED** for a new trial.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

NAQUAN O'NEIL, a/k/a NAQUAN
O'NEAL,

    Defendant-Appellant.


        Argued February 4, 2014 – Decided October 6, 2014

        On certification to the Superior Court,
        Appellate Division.

        Laura B. Lasota, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney; Ms. Lasota and Karen Ann
        Lodeserto, Designated Counsel, of counsel
        and on the briefs).

        Lucille M. Rosano, Special Deputy Attorney
        General/Assistant Essex County Prosecutor
        argued the cause for respondent (Carolyn A.
        Murray, Acting Essex County Prosecutor,
        attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    In State v. Rodriguez, we held that a person who acts in self-defense and "kills in the honest and reasonable belief that the protection of his own life requires the use of deadly force" cannot be convicted of murder, aggravated manslaughter, or manslaughter. 195 N.J. 165, 172-74 (2008). That conclusion, we

1

stated, follows directly from the language of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:11-2(a), 11-4(b)(1), 3-4(b)(2), and 3-9(c).  Id. at 172-73.  In Rodriquez, supra, we put to rest the "mistaken assertion" in State v. Moore, 158 N.J. 292, 303 (1999), that a defendant charged with aggravated manslaughter and manslaughter could not assert self-defense. 195 N.J. at 173-74.

In the 2003 trial of defendant Naquan O'Neil, the trial court instructed the jury that self-defense is a valid justification for murder but not for aggravated manslaughter or manslaughter.  Defense counsel did not object to the charge. The jury acquitted defendant of murder and convicted him of aggravated manslaughter.  On appeal, defense counsel did not challenge the court's charge on self-defense.

In his petition for post-conviction relief (PCR), defendant claims that he was denied the effective assistance of appellate counsel guaranteed by the Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution.  The basis for that claim is that appellate counsel did not raise on direct appeal the erroneous jury instruction that denied him a valid defense to the charges of aggravated manslaughter and manslaughter.[1]  The Law Division

---

[1] Although initially defendant contended that trial counsel was ineffective for not requesting a self-defense charge on the

2

denied the PCR petition, and the Appellate Division affirmed, finding that appellate counsel's performance was not deficient because Moore controlled at the time of defendant's appeal.

We now reverse.  The Appellate Division panel in defendant's direct appeal heard argument on March 21, 2007, but did not render its decision until August 10, 2007.  Between those dates, another Appellate Division panel ruled, in a decision published on March 29, 2007, that self-defense was a valid defense to a charge of manslaughter.  State v. Rodriguez, 392 N.J. Super. 101, 113 (App. Div. 2007).  On this precise issue, this Court granted certification on July 6, 2007.  State v. Rodriguez, 192 N.J. 292 (2007).  Whatever confusion was caused by Moore, defendant's appellate counsel's failure to bring the Rodriguez decisions to the attention of the Appellate Division panel that heard this case rendered counsel's performance ineffective under both our Federal and State Constitutions.  We are therefore constrained to vacate defendant's aggravated-manslaughter conviction and remand for a new trial.

I.

A.

---

aggravated-manslaughter and manslaughter charges, he did not press this claim on appeal.

3

Defendant was indicted on charges of first-degree murder, N.J.S.A. 2C:11-3(a); third-degree unlawful possession of a handgun without a carrying permit, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for the purpose of using it unlawfully against another, N.J.S.A. 2C:39-4(a). At defendant's trial, the court instructed the jury on the additional charges of first-degree aggravated manslaughter and second-degree manslaughter, lesser-included offenses of murder. The charges stemmed from the shooting death of Hassan Hardy. Defendant claimed self-defense as the justification for killing Hardy. The evidence presented at trial relevant to this appeal follows.

B.

Defendant and Hardy had been friends. In the two days before defendant fatally shot Hardy, however, the two had several violent encounters.[2] On the evening of March 16, 2001, they went to a nightclub in Newark with a group of mutual friends. At the club, defendant and Hardy got into an argument and later exchanged verbal insults in a nearby parking lot. The confrontation escalated when Hardy, seated in a friend's car, slammed the car door twice into defendant, who then punched

---

[2] The events leading to the shooting of Hardy are generally not in dispute. Those events, as described, are a composite of the trial testimonies of three witnesses, one of whom was defendant.

4

Hardy. Friends stopped the fight, and defendant and Hardy went their separate ways.

Sometime later that evening, the two encountered each other again on a Newark street. Defendant was sitting on his car when Hardy emerged from behind a bush, armed with a handgun. The two exchanged words, and Hardy, who was much larger than defendant, grabbed defendant by the arm. Hardy fired approximately four shots in the direction of defendant's legs without hitting him and then struck defendant in the head with the gun several times. Hardy began to drag defendant toward an empty lot but let him go when someone yelled that the police were coming. Afterwards, defendant went to a nearby lot and retrieved a .380 caliber handgun from a known gun stash. From there, defendant walked to where Hardy had parked his vehicle and shot out its windows. Defendant did not return the gun to the stash.

Cindy Crawford testified that she was friends with both defendant and Hardy. On March 17, 2001, at 9:00 p.m., defendant picked Crawford up at her house and the two drove in defendant's car. Crawford noticed that defendant had a gun on his lap. At about 10:00 p.m., defendant brought her home.

According to Crawford, at around 1:00 a.m., she observed Hardy standing by a tree near her home. She saw defendant approach Hardy and say to him, "You like playing with guns?" Defendant then opened fire, and Hardy fell to the ground.

5

Crawford did not see Hardy pull a gun on defendant.  Defendant got in a car and left the scene.

After the shooting, Crawford saw someone she recognized from the neighborhood rifle through Hardy's clothing, removing a cell phone, money, and a gun -- but drop the gun as police arrived.  The police recovered a .25 caliber handgun next to Hardy's body.  The gun's trigger was cocked, one live round was in the chamber, and five rounds were in the magazine.  The gun had not been fired.

In his testimony, defendant claimed that, after his earlier bouts with Hardy, he carried a .380 caliber handgun in the early morning of March 18 for protection.  He encountered Hardy again on the street, and they exchanged heated words.  According to defendant, Hardy was angry and pulled from his pocket a gun, which he pointed at defendant.  In response, defendant quickly drew the gun and shot Hardy.  Defendant explained that he did not retreat because he could not "outrun no bullet," and fired the weapon because he feared he "was going to be shot."  After leaving the scene, defendant stated he "[b]lacked out" and either "dropped" or "threw" the gun behind nearby townhouses.

Nine days after the shooting, the police arrested defendant.  The gun used to kill Hardy was never recovered.

C.

At the jury-charge conference, no one questioned that defendant was entitled to a charge on self-defense. The prosecutor and defense attorney, however, agreed that self-defense applied only to the charge of murder and not to the lesser-included charges of aggravated manslaughter and manslaughter -- offenses that are predicated on reckless conduct. See N.J.S.A. 2C:11-4(a)(1) (defining aggravated manslaughter as "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life"); N.J.S.A. 2C:11-4(b)(1) (defining manslaughter as "recklessly" causing death).

The court instructed the jury that, on the charge of murder, "self-defense completely exonerates a person who uses force in the reasonable belief that such action was necessary to prevent his or her death or serious injury, even though his belief was later proven mistaken." The court added, "The defense of self-defense is not applicable to the lesser-included charges of aggravated manslaughter and reckless manslaughter. . . . When the mental state is recklessness, self-defense is not a justification."

The jury acquitted defendant of murder but convicted him of first-degree aggravated manslaughter, third-degree unlawful possession of a handgun, and second-degree possession of a handgun for the purpose to use it unlawfully against another.

7

On May 2, 2003, the trial court sentenced defendant to a prison term of twenty-two years on the aggravated-manslaughter conviction subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to a concurrent five-year term on the unlawful possession of a handgun conviction. The remaining charge was merged into the aggravated-manslaughter conviction. The court imposed all requisite fines and penalties.[3]

## II.

On direct appeal, defendant's appellate counsel raised several purported trial errors and claimed that the sentence was excessive. Appellate counsel did not challenge the self-defense charge. The case was submitted to the Appellate Division on March 21, 2007. Just eight days later, the Rodriguez panel held that self-defense is applicable to both a charge of manslaughter and possession of a weapon for an unlawful purpose. Rodriguez, supra, 392 N.J. Super. at 103.

---

[3] The court did not impose the five-year period of parole supervision mandated by the version of the No Early Release Act in effect at the time of the offense, L. 1997, c. 117, § 2 (eff. June 9, 1997) (codified as amended at N.J.S.A. 2C:43-7.2(c)) ("[A] court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to [N.J.S.A. 2C:43-7.2] shall also . . . impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree . . . .").

Significantly, defendant's appellate counsel failed to raise the validity of the self-defense charge with the panel in this case after the Rodriguez decision was rendered. Nor did appellate counsel raise the self-defense issue with the panel after we granted certification in Rodriguez, supra, on July 6, 2007. 192 N.J. 292. On August 10, 2007, the Appellate Division affirmed defendant's conviction in an unpublished opinion but remanded for re-sentencing pursuant to State v. Natale, 184 N.J. 458 (2005).[4]

### III.

### A.

In May 2008, defendant filed a PCR petition. He claimed that the failure of his trial and appellate attorneys to raise self-defense as a defense to aggravated manslaughter and manslaughter constituted ineffective assistance of counsel. Defendant argued that "it has always been the law of New Jersey that self-defense could be a justification for a charge of manslaughter" and that this Court's decision in Rodriguez "authoritatively clarified" this issue in the wake of "confusion generated by the language in [Moore]."

In September 2010, the PCR court denied the petition on two grounds. It held that defendant should have raised a challenge

---

[4] On remand, the court imposed the sentence originally given to defendant.

9

to the jury charge at trial or on direct appeal and therefore was procedurally barred by Rule 3:22-4 from raising the claim on PCR. It also held that appellate counsel did not act unreasonably by relying on Moore -- "the most recent available opinion on the topic." The PCR court maintained that appellate counsel could not be expected to have anticipated this Court's 2008 decision in Rodriguez.

Defendant appealed.

### B.

The Appellate Division affirmed in an unpublished opinion. The panel reasoned that before this Court's decision in Rodriguez, "it was by no means clear that a trial court" was required to charge on self-defense in a manslaughter case. The panel maintained that, although "case law fragments" indicated that self-defense was an available defense to a manslaughter charge at the time of defendant's trial, citing State v. Kelly, 97 N.J. 178, 203-04 n.12 (1984), and State v. Ciuffreda, 127 N.J. 73, 81-82 (1992), the "governing law" was nonetheless "ambiguous" because of language in Moore, which suggested that self-defense was barred in crimes charging recklessness. According to the panel, not until this Court in Rodriguez rejected the disputed language in Moore did defendant's appellate counsel have a professional or constitutional obligation to raise self-defense as a defense to a manslaughter

charge. Indeed, the panel asserted that defendant's trial and appellate counsel should not be faulted for not predicting that this Court "would repudiate its earlier unqualified assertion in Moore that self-defense claims do not pertain to crimes of recklessness." The panel concluded that defendant was not deprived of the effective assistance of counsel guaranteed by the Federal and State Constitutions.

This Court granted defendant's petition for certification. State v. O'Neil, 214 N.J. 119 (2013).

IV.

Defendant argues that our holding in Rodriguez -- that self-defense can constitute a defense to manslaughter -- did not announce a new rule of law. Instead, he submits that Rodriguez merely reaffirmed well-settled principles found in the Code of Criminal Justice and our jurisprudence, and clarified our earlier decision in Moore. On this basis, defendant insists that Rodriguez's holding should be fully retroactive and applicable to his PCR petition. Alternatively, he reasons that even if Rodriguez did set forth a new rule of law, the new "rule must apply retroactively to the small class of cases in which the trial court erroneously relied upon the dicta in Moore in denying a self-defense" charge for aggravated manslaughter and manslaughter. Defendant, moreover, submits that appellate counsel was constitutionally deficient because he "should have

11

been aware of the Appellate Division's published opinion in Rodriguez which was issued while [defendant's] direct appeal was pending" and should have raised the jury charge issue in that appeal.

In contrast, the State urges this Court to affirm the Appellate Division. The State submits that our holding in Rodriguez represents a new rule of law and therefore does not apply retroactively on collateral review, such as on PCR. It points out that the Court in Moore "made the broad pronouncement that the justification of self-defense was not available where the charged offense required a reckless state of mind." The State notes that several Appellate Division decisions, all but one unpublished, relied on the "unequivocal language" of Moore. The State maintains that any retroactive application of Rodriguez should be limited to cases pending on direct review on the day Rodriguez was announced. Because our decision in Rodriguez was decided ten months after defendant's direct appeal, the State argues that interests in finality must be respected. Additionally, the State insists that "[a]ppellate counsel should not be held accountable for failing to anticipate the Supreme Court would affirm Rodriguez," nor should she have "a never-ending obligation . . . to advocate ad infinitum." The State concludes that appellate counsel "exercised reasonable professional judgment" and fulfilled her responsibility to

12

provide effective representation under both the Federal and State Constitutions.

V.

A.

This appeal comes to us from the denial of defendant's petition for PCR.  A PCR proceeding provides a defendant a forum to remedy a substantial denial of rights guaranteed by "the Constitution of the United States or the Constitution or laws of the State of New Jersey."  R. 3:22-2(a).  It is a defendant's last opportunity "to challenge the 'fairness and reliability of a criminal verdict in our state system.'"  State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)).  It is a "safeguard" intended to ensure that "a defendant was not unjustly convicted."  State v. McQuaid, 147 N.J. 464, 482 (1997).

"Ineffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding."  State v. Preciose, 129 N.J. 451, 460 (1992).  Indeed, without collateral review, a defendant would have no forum to review his claim that he was denied the effective assistance of counsel on direct appeal. That is so because a defendant "will often not realize that he has a meritorious ineffectiveness claim until he begins

13

collateral review proceedings." Kimmelman v. Morrison, 477 U.S. 365, 378, 106 S. Ct. 2574, 2584, 91 L. Ed. 2d 305, 321 (1986).

The primary focus of defendant's challenge is that he was denied the effective assistance of appellate counsel in violation of the Federal and State Constitutions. We now turn to the law governing defendant's claim.

B.

The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both have been construed to guarantee an accused "'the right to the effective assistance of counsel'" in a criminal proceeding. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674, 692 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14, 25 L. Ed. 2d 763, 773 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting Strickland's effective-assistance standard). The standard for establishing that a defendant was denied the effective assistance of counsel is the same under both the Federal and State Constitutions. State v. Allah, 170 N.J. 269, 283 (2002).

The right to effective assistance includes the right to the effective assistance of appellate counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396, 105 S. Ct. 830, 836, 83 L. Ed. 2d 821, 830 (1985) ("A first appeal as of right . . . is not

14

adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."); State v. Guzman, 313 N.J. Super. 363, 374 (App. Div.) (holding that Strickland test applies to claims of ineffective assistance at trial level and on appeal), certif. denied, 156 N.J. 424 (1998).

To establish ineffective assistance of counsel, a defendant must satisfy two prongs. First, he must demonstrate that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; Fritz, supra, 105 N.J. at 52. An attorney's representation is deficient when it "[falls] below an objective standard of reasonableness." Strickland, supra, 466 U.S. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; see Fritz, supra, 105 N.J. at 58.

Second, a defendant "must show that the deficient performance prejudiced the defense." Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; Fritz, supra, 105 N.J. at 52. A defendant will be prejudiced when counsel's errors are sufficiently serious to deny him "a fair trial." Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; Fritz, supra, 105 N.J. at 52. The prejudice standard is met if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

15

proceeding would have been different." Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 52. A "reasonable probability" simply means a "probability sufficient to undermine confidence in the outcome" of the proceeding. Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 52.

We next discuss the law of self-defense relevant to the present case.

VI.

A.

In Rodriguez, supra, we affirmed a reported Appellate Division decision, which held that "a valid claim of self-defense -- when not disproved by the State -- exonerates a defendant of reckless manslaughter." 195 N.J. at 169. In the case before us, no one disputed at trial that defendant had a legitimate claim of self-defense that had to be decided by the jury. The jury in this case, without objection, was told that self-defense could not exonerate defendant of aggravated manslaughter or manslaughter because the mental state at issue was recklessness on both charges. Defendant presented only one defense to the jury: self-defense. One fair inference is that the defense succeeded, given the acquittal on murder. Defendant, however, had no legitimate defense to aggravated

16

manslaughter or manslaughter in light of the court's charge that self-defense could not exonerate defendant of those crimes.

As earlier explained, the published Appellate Division opinion in Rodriguez was decided just eight days after the appeal in this case was submitted to the panel and more than four months before that panel rendered its decision.  The Appellate Division decision in Rodriguez directly benefitted defendant, signaling that he had been denied a legitimate defense at his trial.  That decision was "an expression of the law of our State" at that time.  See Gormley v. Wood-El, 218 N.J. 72, 114 (2014) ("The decisional law of the Appellate Division is not only binding on our trial courts, but is an expression of the law of our State unless the New Jersey Supreme Court says otherwise.").  Nevertheless, appellate counsel failed to raise that meritorious issue before the panel in this case.  Nor did she raise the issue with the panel after we granted certification in Rodriguez.

While appellate counsel does not have an obligation "to advocate ad infinitum," she should bring to the court's attention controlling law that will vindicate her client's cause.  See Stallings v. United States, 536 F.3d 624, 628 (7th Cir. 2008) (holding appellate counsel's performance deficient for failing to challenge sentence pursuant to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005),

17

where Booker was decided after defendant's conviction but prior to appeal); Ballard v. United States, 400 F.3d 404, 410-11 (6th Cir. 2005) (holding appellate counsel ineffective for failing to raise violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), where Apprendi was decided while direct appeal pending); see also R. 2:6-11(d) ("A party may . . . without leave, serve and file a letter calling to the court's attention . . . relevant cases decided or legislation enacted subsequent to the filing of the brief.").

B.

Additionally, our Rodriguez decision, which was rendered after defendant's direct appeal had run its course, was not a novel interpretation of the law of self-defense. We explained in detail in Rodriguez, supra -- and need not repeat at length here -- that the plain language of the relevant provisions of the Code of Criminal Justice led to the inexorable conclusion that self-defense was a defense to aggravated manslaughter and reckless manslaughter. 195 N.J. at 171-73. By the very terms of the Code, the use of deadly force is justifiable provided that (1) the defendant "'reasonably believes that such force is necessary to protect himself against death or serious bodily harm,'" (2) he does not "'provoke[] the use of force against himself,'" and (3) he does not have the ability to safely retreat. Id. at 171 (quoting N.J.S.A. 2C:3-4(b)(2)).

18

"Reasonably believes" is defined in the Code as "'a belief the holding of which does not make the actor reckless or criminally negligent.'" Id. at 172 (quoting N.J.S.A. 2C:1-14(j)). We thus concluded that "[b]ased on the Code's own language, a person who kills in the honest and reasonable belief that the protection of his own life requires the use of deadly force does not kill recklessly." Ibid. Notably, manslaughter and aggravated manslaughter both require proof that the accused recklessly caused the death of another human being. Ibid. (citing N.J.S.A. 2C:11-4(a)(1), (b)(1)). Accordingly, the Code's plain language indicates that self-defense applies to charges of aggravated manslaughter and manslaughter.

In addition, from the inception of the Code, case law reflected what the Code made manifest -- that defendants facing manslaughter charges could offer a self-defense justification. See Kelly, supra, 97 N.J. at 204 n.12 (holding that legislative intent at time of Code's enactment was that "self-defense based on a reasonable belief in the need for deadly force would constitute justification -- a complete defense -- to the charge of reckless manslaughter"); see also Ciuffreda, supra, 127 N.J. at 81-82 (stating that self-defense could be valid justification against both aggravated manslaughter and reckless manslaughter); State v. Hines, 303 N.J. Super. 311, 323 (App. Div. 1997) ("Self-defense is a complete defense not only to murder but also

19

to manslaughter . . . ." (citing Kelly, supra, 97 N.J. at 203-04 n.12)).

In light of that history, we viewed the broadly stated dicta in our 1999 decision in Moore -- that "'[t]he Code's justification defenses are not available in a prosecution where recklessness or negligence suffices to establish the requisite mental element'" -- as a "mistaken assertion" limited to the peculiar facts in Moore. Rodriguez, supra, 195 N.J. at 173-74 (quoting Moore, supra, 158 N.J. at 303). Although here the State cites State v. Hogan, 336 N.J. Super. 319, 346 (App. Div.), certif. denied, 167 N.J. 635 (2001), which repeated the language in Moore later disapproved in Rodriguez, in the end the Hogan court reached a result similar to the one in Rodriguez. The Hogan court upheld a grand jury charge, which "conveyed the principle that if defendants were reasonable in perceiving they were under attack and used reasonable force to repel that attack, they could not be charged with aggravated assault, an offense that required 'reckless' conduct as an alternative predicate to a conviction." Id. at 347.

It also bears mentioning that a widely read commentator, in discussing N.J.S.A. 2C:3-9 at the time of defendant's direct appeal, warned that "[Moore] should not be read to indicate that the subsection means that the justification of self-defense is unavailable against any charge based on recklessness." Cannel,

20

*New Jersey Criminal Code Annotated*, comment 4 on N.J.S.A. 2C:3-9 (2002). The commentator emphasized that "[i]f the actor is justified in using the actual force that occurred, the justification is available against all charges based on the force." Ibid. That commentary foreshadowed the Appellate Division decision in *Rodriguez*.

With these principles in mind, we now turn to whether defendant's counsel provided constitutionally deficient representation.

## VII.

The parties dispute the extent of retroactivity to be accorded to our *Rodriguez* holding. The parties argue over whether *Rodriguez* recites a long-standing rule or a new one and whether *Rodriguez* should be given full retroactivity or only pipeline retroactivity. We need not address these issues here. Instead, we are presented with the narrow question of whether defendant's appellate attorney denied defendant the effective representation of counsel guaranteed by the Sixth Amendment of the Federal Constitution and Article I, Paragraph 10 of our State Constitution.

We conclude that defendant's counsel's representation "fell below an objective standard of reasonableness." See *Strickland*, supra, 466 U.S. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; *Fritz*, supra, 105 N.J. at 58. Putting aside (1) the clear

21

language of the Code indicating that self-defense is available to charged crimes involving the mens rea of recklessness, (2) cases such as Kelly that state the same, and (3) the commentary to N.J.S.A. 2C:3-9 cautioning lawyers not to misread Moore as suggesting that "self-defense is unavailable against any charge based on recklessness," defendant's appellate counsel should have brought to the attention of the appellate panel in defendant's case the Appellate Division decision in Rodriguez. That decision explained that self-defense is a defense in a manslaughter prosecution and construed the factual setting of Moore to support that statement of law. See Rodriguez, supra, 392 N.J. Super. at 112-14.

At the time of defendant's appeal, the Appellate Division's Rodriguez decision was the controlling law unless overturned by this Court. That decision clearly expressed that defendant was denied a valid defense to the lesser-included offenses of aggravated manslaughter and manslaughter at his trial. Surely, appellate counsel could have no strategic reason for not raising a ruling that presumably would lead to a new trial for his client. The Strickland/Fritz standard may not require appellate counsel to have the foresight to raise a cutting-edge issue or anticipate a change in the law not evident in existing jurisprudence. However, "once a change -- particularly an important and relevant change -- does come about," counsel is

22

expected to be aware of it.  <u>Ballard</u>, <u>supra</u>, 400 <u>F.</u>3d at 408; <u>see</u> <u>Stallings</u>, <u>supra</u>, 536 <u>F.</u>3d at 627-28.  If every person is presumed to know the law, no exception can be made for appellate counsel.  Although informed "strategic choices" made by counsel will rarely be subject to challenge, <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 690, 104 <u>S. Ct.</u> at 2066, 80 <u>L. Ed.</u> 2d at 695, no deference must be paid to a choice made in disregard of standing precedent.

The prejudice suffered by defendant is clear.  Had appellate counsel raised the self-defense issue, there is a reasonable probability that the panel deciding defendant's appeal would have applied the published holding of its sister panel, almost certainly leading to the reversal of defendant's aggravated-manslaughter conviction.  Even had the panel denied relief, that would have led to inconsistent decisions between two appellate panels, an independent ground for the grant of certification by this Court.  In any event, this Court granted certification in <u>Rodriguez</u> even before defendant's panel reached its decision.  At the very least, the issue would have been preserved if raised by appellate counsel.

We find that, but for appellate counsel's errors, there is "a reasonable probability" that "the result of the proceeding would have been different."  <u>See</u> <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 694, 104 <u>S. Ct.</u> at 2068, 80 <u>L. Ed.</u> 2d at 698; <u>Fritz</u>, <u>supra</u>, 105

23

N.J. at 52. If the jury found that defendant had an honest and reasonable belief that the use of deadly force was necessary to save his own life, that he was not the aggressor, and that he could not have safely retreated, then self-defense applied not only to the murder charge, but also to the aggravated-manslaughter and manslaughter charges. The jury was instructed that self-defense applied to the murder charge and acquitted defendant of that offense. The jury was instructed that self-defense did not apply to the aggravated-manslaughter and manslaughter charges and convicted him of those offenses.

Of course, we cannot know the precise reason for the jury's verdict of not guilty to murder. Nevertheless, the trial court's failure to charge self-defense on aggravated manslaughter and manslaughter leaves open a reasonable probability that, if properly instructed, the outcome would have been different. The erroneous jury instruction necessarily undermines confidence in the verdict. See Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 52.

VIII.

For the reasons expressed, we reverse the judgment of the Appellate Division, vacate defendant's aggravated-manslaughter conviction, and remand for a new trial.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-68                         SEPTEMBER TERM 2012

ON CERTIFICATION TO         Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

          v.

NAQUAN O'NEIL, a/k/a NAQUAN

O'NEAL,

      Defendant-Appellant.

DECIDED                October 6, 2014

                Chief Justice Rabner               PRESIDING

OPINION BY           Justice Albin

CONCURRING/DISSENTING OPINIONS BY               

DISSENTING OPINION BY                     

| CHECKLIST | REVERSE/ VACATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1