**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0983-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH A. BAKER,
a/k/a JOE BAKER,
ANTHONY BAKER,
and SUTAN,

    Defendant-Appellant.

_____

Submitted November 9, 2023 – Decided January 4, 2024

Before Judges Currier and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 00-05-0556.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Joseph A. Baker appeals an August 24, 2021 Law Division order denying his request for a new trial based on what he claims is newly discovered evidence.[1]  In 2001, he was convicted for felony murder and related offenses.  For the most part, defendant's current appeal raises issues that were already considered and rejected in his direct appeal and his appeal from the denial of his previous PCR petition.  Defendant's only new argument, presented in his pro se brief, is that his current counsel on appeal from the denial of his PCR petition rendered ineffective assistance.  After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

We briefly summarize the procedural history leading to this appeal.  In May 2000, defendant was charged by indictment with first-degree murder,

---

[1]  The parties and motion court disagree whether defendant's present application is a second petition for post-conviction relief (PCR) or a motion for a new trial pursuant to Rule 3:20-1.  The motion court treated defendant's application as a motion for a new trial.  The question of whether the present application is properly characterized as a PCR petition or motion for a new trial is largely academic.  Under either formulation, defendant has failed to establish a basis to vacate his trial convictions.

A-0983-21

N.J.S.A. 2C:11-3(a)(1) and (2); first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree possession of a weapon (handgun) with an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b).

Defendant's first trial ended in a hung jury. At his second trial, defendant's father, William,[2] testified as a prosecution witness. William previously pled guilty to drug and weapons offenses. He had not been sentenced when he testified against defendant. The trial judge instructed the jury that it could consider William's sentencing exposure "to determine any possible bias or prejudice that [William] may have, specifically, is [William] testifying the way he will be testifying as a result of any promise he had or hope for leniency on those charges?" When William was sentenced after defendant's conviction, the sentencing court treated William's cooperation as a mitigating factor. It imposed a lower sentence than the sentence outlined in William's plea agreement.

In addition, the State introduced testimony from defendant's girlfriend, B.L.E.,[3] at defendant's second trial. Defendant met and began a relationship

---

[2]  Because defendant and his father share the same surname, we use the father's first name to avoid confusion. We mean no disrespect in doing so.

[3]  We refer to the witness by initials because her medical records are discussed. See R. 1:38-3(a)(2).

with B.L.E. in North Carolina prior to his arrest. On the first day of defendant's second trial, detectives met with B.L.E. in North Carolina. She was transported to New Jersey by police that night. Defendant objected to her testimony, claiming surprise. He sought to bar her testimony or, in the alternative, be given time to conduct further discovery. The trial court initially reserved decision. It instructed the parties not to refer to B.L.E. in their opening arguments and allowed the defense to meet with B.L.E. to obtain information.

The defense uncovered information suggesting B.L.E. suffered from a psychological disorder. The trial court received her medical records from a mental health clinic. Defense counsel met with B.L.E. in the presence of an investigator and reviewed the records. Subsequently, the trial court denied defendant's renewed request to exclude her testimony or adjourn the trial for further discovery. The trial court reasoned that B.L.E. was well known to defendant. Further, the State had complied with the discovery requirements. The trial court ruled the defense could cross-examine B.L.E. on her psychiatric condition and "any other line of questioning that is relevant and material." B.L.E. testified five days later.

We next summarize the evidence adduced at trial, which is more fully recounted in our opinion deciding defendant's direct appeal. See State v. Baker,

A-0983-21

No. A-5259-01 (App. Div. Sept. 27, 2004). On the evening of September 23, 1999, William was walking towards an apartment building in Elizabeth, New Jersey to purchase drugs. He was accompanied by Carol Ann Lamanno and David Estrada. William, Lamanno, and Estrada encountered defendant and another man at the intersection of Cherry and Orchard Streets. Defendant and the other man were on bicycles.

After a brief but "friendly conversation," defendant said, "[h]ere comes my man now." Together, he and his companion bicycled across the street toward a laundromat. Defendant testified he was selling drugs and had over $1,000 on his person at the time. Defendant and the other man then spoke with a third man, Nelson Rodriguez. The three men entered an alleyway near the laundromat.

Shortly thereafter, William and Lamanno heard "popping sounds" coming from the alley. After hearing the noise, William and Lamanno saw defendant and the other man emerge from the alley and flee on their bicycles. William and Lamanno walked towards the alley and found Rodriguez's lifeless body. He suffered a fatal close-range gunshot wound to the head. Police responded to the scene after receiving reports of gunfire. Police unsuccessfully searched the area for witnesses and shell casings.

A-0983-21

The next day, William—who had served as a confidential informant for several Elizabeth police officers—reported to detectives what he knew about the shooting. William explained he felt "disrespected" that his son might have committed a crime in his presence. William also said defendant "was out there to rob someone." Despite urging from defendant, William refused to recant his statement to police.

Cheronda Ingram, defendant's former girlfriend, also spoke to police about the shooting. She claimed defendant told her he had "shot somebody." Defendant denied making any such statement to Ingram.

Two days after the shooting, detectives located defendant and brought him to a police station for questioning. He admitted he was at the corner of Cherry and Orchard Streets on the day of the shooting, but claimed he was alone.

A warrant for defendant's arrest was issued in September 1999. Eventually, on March 9, 2000, he was apprehended in North Carolina. When detectives located B.L.E. in North Carolina, she informed them that defendant told her he was "on the run for murder," and "he robbed somebody for some dope and some money" in an alley. At trial, B.L.E. testified defendant told her he had held a gun to a boy's head and it went off. Defendant denied admitting

6

to the crime to B.L.E. The State introduced a correspondence defendant sent B.L.E. explaining his belief that he could "beat" the charges.

The jury returned a guilty verdict on all counts. At sentencing, the trial court merged the manslaughter, robbery, and possession of a weapon for an unlawful purpose convictions with the felony murder conviction and imposed a life term with thirty years of parole ineligibility. The court also imposed a consecutive five-year term with two and one-half years of parole ineligibility for the unlawful possession of a weapon conviction.

Defendant appealed his convictions and sentence, raising eleven contentions in counseled and pro se briefs. In his direct appeal, defendant challenged William's testimony that he "neither received nor expected favorable treatment from the State in exchange for his testimony against defendant." Defendant also argued the trial court erred in allowing B.L.E. to testify without granting an adjournment for defendant "to prepare for the surprise witness."

We rejected defendant's contentions. Regarding William's testimony, we noted the prosecutor's "acquiescence to the court's application of the 'cooperating with the State' mitigating factor [at William's sentencing] is not sufficient to infer the existence of a concealed quid pro quo agreement." Regarding B.L.E.'s testimony, we stated "we are in complete agreement with the

7

trial judge on this issue. The witness was known to defendant long before the State became aware of her." Although we affirmed the convictions, we remanded to the trial court to amend the judgment of conviction to reflect the unlawful possession of a weapon sentence was concurrent with the felony murder sentence.

Defendant filed a PCR petition in March 2005, claiming ineffective assistance of counsel, primarily because trial counsel did not call certain witnesses at the second trial who testified at the first trial. He also claimed newly discovered evidence warranted a new trial. The newly discovered evidence claims pertained to the sentence William received after defendant's trial, and to B.L.E.'s post-trial claim she was coerced by police to inculpate defendant.

The PCR court conducted an evidentiary hearing over seven non-consecutive days between June and November 2006. The PCR court carefully examined B.L.E.'s assertion that she was coerced into inculpating defendant. She claimed she repeatedly told detectives that defendant never told her about the shooting. Instead, she only heard about his involvement from William and defendant's sister. She said the detectives refused to believe her and she was afraid of one of them. Therefore, "she told them what they wanted to hear." She

A-0983-21

also claimed she signed the pre-written statement implicating defendant without reading it. A doctor who performed a psychological evaluation of B.L.E. testified she suffered from psychological disorders which could cause her to "be easily influenced and coerced by authority figures." The detective who allegedly coerced B.L.E. contradicted her claims. He testified she never expressed any hesitation or unwillingness to speak with the officers. The PCR judge found B.L.E.'s allegations "confusing and convoluted." In contrast, the PCR judge found the detectives' testimony credible. Based on those findings, the PCR judge rejected the claim that B.L.E. had been coerced.

The PCR judge also rejected defendant's newly discovered evidence arguments pertaining to William's sentence. The PCR court concluded the testimony regarding William's expected sentence was truthful. Further, evidence that William was ultimately sentenced to a three-year prison term rather than the five-year term contemplated in his plea agreement did not impact the jury verdict.

The PCR judge was also unpersuaded by defendant's ineffective assistance of counsel claims and, therefore, denied defendant's petition. On appeal, we affirmed the denial of defendant's petition for PCR.

A-0983-21

In March 2019, defendant filed a motion for a new trial based on the same "newly discovered" evidence raised in the initial PCR, as well as the claimed ineffective assistance of his PCR appellate counsel. That is the motion now before us. As we have noted, there was confusion by both defendant's counsel and the State about whether defendant's application was a motion for a new trial or a second petition for PCR. See supra note 1. At the outset of the August 20, 2021 hearing, the motion court determined defendant's application would be treated as a motion for a new trial and not a second PCR petition.[4]

The motion court determined defendant's newly discovered evidence arguments pertaining to William and B.L.E. were procedurally barred because both claims had already been rejected by the Appellate Division. The motion court nonetheless proceeded to rule on the merits, finding there was no evidence the State offered William an undisclosed deal for his testimony. The motion court reasoned, "it is clear that the sentence reduction [William] received was by judicial discretion and not by the State altering the terms of its agreement with [William]. And thus, this would not be then material evidence."

---

[4] The motion court noted the ineffective assistance claim was "a PCR issue" and did not rule on that portion of defendant's motion.

A-0983-21

As for defendant's contentions regarding B.L.E., the motion court relied on the record developed in the PCR hearing. It found "[B.L.E.] changed her testimony three times in the course of trial so that it was not believable and so that the mental health records would not have had any material impact upon the jury verdict." The motion court concluded, "since the defendant failed to meet [the two materiality prongs of the test for newly discovered evidence], the two issues raised by the defendant do not justify a new trial and his motion for a new trial is denied."

This appeal follows. Defendant raises the following contentions for our consideration in his counseled brief:

> POINT I
>
> DEFENDANT'S CLAIMS ARE NOT PROCEDURALLY BARRED.
>
> POINT II
>
> THE NEWLY DISCOVERED EVIDENCE PRESENTED BY DEFENDANT WAS MATERIAL AND HAD THE CHARACTER OF CHANGING THE VERDICT.
>
>> (1) The fact that William Baker received a more favorable sentence than that conveyed to the jury was material evidence that would have further undermined his credibility.

> (2)   As [B.L.E.]'s mental health history was newly discovered material evidence of the character that could have influenced the outcome of the proceeding, a new trial is required.

Defendant raises the following additional contentions in his pro se brief:

POINT I

THE NEWLY DISCOVERED EVIDENCE THAT THE STATE[']S PRINCIPAL WITNESS RECEIVED A REDUCED SENTENCE AFTER TRIAL SPECIFICALLY FOR HIS COOPERATION WITH THE STATE WAS NOT MADE KNOWN TO THE JURY IS MATERIAL AND VIOLATED APPELLANT[']S CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE HOLDING IN GIGLIO V. UNITED STATES, 405 U.S. 150 (1972).

POINT II

A NEW TR[IA]L IS REQUIRED ACCORDING TO THE HOLDING IN STATE V. HENRIES, 306 N.J. SUPER[.] 512 (1997)[,] WHERE AFTER THE COMPLETION OF DEFENDANT'S TRIAL IT WAS LEARNED THAT THE STATE[']S SURPRISE WITNESS SUFFERED FROM MENTAL RETARDATION AND MULTIPLE PSYCHOLOGICAL DISORDERS NOT MADE THE JURY [SIC].

POINT III

APPELLATE PCR COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY ADVANCE ALL LEGAL ISSUES THAT W[ERE] RAISED IN THE

12

PCR COURT TO THE APPELLATE COURT OR SUPREME COURT. APPELLATE PCR COUNSEL SUBMITTED A DEFICIENT TWENTY[-]THREE PAGE LETTER BRIEF CONTAINING NO CASE LAW AND FAILED TO CORRECT THE RECORD BELOW AND PREJUDICE[D] THE DEFENDANT'S APPEAL FROM THE DENIAL OF PCR.

## II.

We first address whether defendant is procedurally barred from raising issues that have already been decided on appeal. The motion court ruled that defendant's newly discovered evidence claims were barred because they were already adjudicated. However, it did not specify whether it was relying on Rule 3:22-5—which specifically bars relitigation in the PCR context—or general principles of collateral estoppel. Because the motion court stated, "this is not an application for [PCR]" we infer it was relying on the collateral estoppel doctrine. In its brief, the State only discusses Rule 3:22-5. Defendant, meanwhile, broadly argues "the procedural bars in this case should be relaxed," relying on notions of "basic fair play and fundamental fairness."

The doctrine of collateral estoppel bars relitigation of issues that have "been litigated and determined." State v. Kelly, 406 N.J. Super. 332, 344 (App. Div. 2009), aff'd, 201 N.J. 471 (2010). For an issue to be precluded by a prior determination, the party asserting the bar must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Id. at 345 (quoting State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007)).]

Rule 3:22-5 likewise bars relitigation of issues, stating, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

Under either theory, the basic prerequisites for precluding defendant's renewed claims are clearly present. The gravamen of defendant's present argument is that an exception should apply. Our Supreme Court has acknowledged in this regard, "Rule 3:22-5's bar to review of a prior claim litigated on the merits 'is not an inflexible command.'" State v. Nash, 212 N.J. 518, 547 (2013) (quoting State v. Franklin, 184 N.J. 516, 528 (2005)). The Court specifically stated, "th[at] rule does not prohibit a claim for relief based on newly discovered evidence." Ibid. The Court continued, "our courts are not

powerless to correct a fundamental injustice." Ibid. While Nash's holding was in the context of PCR-specific procedural rules, we presume courts are not required to "acquiesce to a miscarriage of justice" when applying general preclusion principles. Id. at 546.

A fundamental injustice exists "when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome' or when 'inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" Ibid. (quoting State v. Mitchell, 126 N.J. 565, 587 (1992)). "To succeed on a fundamental-injustice claim, the petitioner must make 'some showing' that an error or violation 'played a role in the determination of guilt.'" Ibid. (quoting Mitchell, 126 N.J. at 587).

In essence, the fundamental-injustice standard described in Nash allows courts to vault procedural hurdles when a petitioner would have a meritorious claim but for the procedural bar. We are satisfied defendant has not been subjected to any fundamental injustice. However, in an abundance of caution, we follow the motion court's lead and address defendant's contentions on their merits.

III.

15

"Rule 3:20-1 and -2 provide a mechanism for seeking a new trial following a criminal conviction." State v. Armour, 446 N.J. Super. 295, 305 (App. Div. 2016). "Rule 3:20-2 permits a defendant to do so 'on the ground of [newly discovered] evidence' at any time." Ibid. Appellate courts "review a motion for a new trial decision for an abuse of discretion." State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020) (citing Armour, 446 N.J. Super. at 306). "Questions of law are reviewed de novo." Ibid. (citing State v. Miles, 229 N.J. 83, 90 (2017)).

A new trial is only granted if the new evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." Ibid. (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

Our Supreme Court has recognized that "prongs one and three [of the newly discovered evidence test] are inextricably intertwined." Nash, 212 N.J. at 549. "'[E]vidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.'" Ibid. (quoting State v. Ways, 180 N.J. 171, 189 (2004)). "'The power of the newly discovered evidence to alter the verdict is the

central issue, not the label to be placed on that evidence.'" Id. at 449-50 (quoting Ways, 180 N.J. at 191-92).

The key disputed issues here turn on the materiality of the evidence pertaining to William's eventual sentence and B.L.E.'s mental condition. The new evidence pertaining to William does not directly contradict his testimony, but rather relates to a potential motive for testifying against his son. The new evidence is the type of "impeaching" evidence that ordinarily does not warrant a new trial. See Nash, 212 N.J. at 549.

Importantly, and as we previously determined on direct appeal, the jury was not misled regarding William's plea agreement. Instead, the jury heard about William's plea agreement as it was understood at the time of his testimony. That readily distinguishes the present matter from the case defendant relies upon in point one of his uncounseled brief, Giglio v. United States, 405 U.S. 150 (1972). In Giglio, a new trial was granted because the Government told the jury a key witness had not been offered immunity for his testimony despite an affirmative promise to the contrary. Id. at 151-52, 154.

We also deem it important that the possibility William might receive additional leniency based on his testimony was not concealed from the jury. The trial court specifically instructed the jury:

17

> [Y]ou've heard some testimony that [William] has charges to which he is awaiting sentencing, as of this time he's not yet sentenced and, therefore, the same cannot be used to challenge his credibility, believability, but <u>may</u> only <u>be used</u>, by you, <u>to determine any possible bias or prejudice that [William] may have</u>, specifically, is [William] testifying the way he will be testifying <u>as a result of any</u> promise he had or <u>hope for leniency</u> on those charges?

On these facts, we are convinced the "new" evidence concerning the sentence William eventually received is not sufficiently material to warrant a new trial. See <u>Nash</u>, 212 N.J. at 549.

We turn next to the materiality of B.L.E.'s post-trial claim she had been coerced by police and the "newly discovered" evidence of her mental health issues. The PCR court, which heard testimony from B.L.E. as well as a psychologist who examined her, determined her claim of coercion was not credible. The PCR court concluded her testimony was "conflicted. It is not supported by other evidence not in dispute. And, therefore, the [c]ourt finds no merit to her testimony. And, therefore, as to that aspect[,] the application for a new trial is denied."

Once again, there is no basis upon which to overturn that finding. We see no reason why the motion court could not rely on it in denying defendant's latest attempt to vacate his convictions. We add that aside from the deference we

18

generally accord to a trial court's credibility findings, "[t]he Supreme Court has . . . counseled that [newly discovered] evidence 'must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication. . . .'" State v. Tormasi, 443 N.J. Super. 146, 151 (App. Div. 2015) (quoting Ways, 180 N.J. at 187-88). We note that the psychologist who testified at the PCR hearing on defendant's behalf also acknowledged B.L.E. "could be easily coerced by people including loved ones or people she wants to impress." The record shows defendant was expressing his "ongoing love and affection for" B.L.E. when she made her claims of coercion.

## IV.

Finally, we turn to defendant's contention the attorney who handled the appeal from the denial of his 2009 PCR motion was ineffective.[5] Defendant makes two arguments in this regard: first, his counsel should have raised the issue of William's post-trial sentence; and second, his counsel should have "correct[ed] the record" as it pertained to the PCR court's findings regarding the

---

[5] The motion court did not rule on this issue. See supra note 4. We see no point at this juncture in remanding for further findings by the motion court since the record before us clearly demonstrates defendant's ineffective assistance contention does not provide a basis for PCR.

trial counsel's purported ineffectiveness in not calling a particular witness, Pamela Kurzweil.

In order to demonstrate ineffectiveness of counsel, "[f]irst, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). In State v. Fritz, our Supreme Court adopted the two-part test articulated in Strickland. 105 N.J. 42, 58 (1987).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second prong of the Strickland/Fritz test requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694.

The same Strickland/Fritz standard applies to the assessment of ineffective assistance of counsel claims asserted against appellate counsel. See State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). Appellate counsel does not have an obligation to "advance every argument, regardless of merit, urged by the appellant," Evitts v. Lucey, 469 U.S. 387, 394 (1985), but "should bring to the court's attention controlling law that will vindicate [the appellant]'s cause." State v. O'Neil, 219 N.J. 598, 612 (2014). Failure to do so constitutes ineffective assistance if there is a "reasonable probability" that the outcome of the appeal would have been different. Id. at 617. Thus, to prove ineffectiveness, a defendant must prove an underlying claim to relief is meritorious. State v. Morrison, 215 N.J. Super. 540, 547-51 (1987).

As to the first prong, the brief filed by defendant's PCR appeal counsel appears inadequate on its face. The brief does not include a single legal citation, stating instead:

> There is no useful purpose in again setting out pages of boilerplate decisional law as to claims of ineffective assistance of counsel that has been spread out fairly fully in the briefs filed below and that has again been reviewed in summary form in [the PCR judge]'s preface to addressing these claims.

But even accepting that the first prong of the Strickland/Fritz test has been satisfied, defendant has not shown he was prejudiced by appellate counsel's

21

performance.  See Fritz, 105 N.J. at 58.  Even if counsel had fully briefed the issues, it would not have changed the ultimate result.  With respect to defendant's contentions concerning William's sentence, better briefing could not have changed the result for the reasons we explained in the preceding section.

So too, we need only briefly discuss defendant's claim appellate counsel failed to "correct the record" regarding the claimed ineffectiveness of defendant's trial counsel with respect to Kurzweil's testimony.  Defendant's pro se brief to the motion court, which he incorporates by reference in this appeal, challenges the initial PCR court's characterization of certain testimony.  For example, the PCR court said defendant's trial counsel "did not recall defendant insisting that any of their witnesses be called to testify at the second trial . . . ." Although defendant's trial counsel did not specifically recall defendant requesting Kurzweil's testimony, he testified a subpoena was sent to Kurzweil suggesting defendant "probably did" request her testimony.  Defendant argues the PCR court's findings are inconsistent with the evidence adduced at the hearing.  Any such discrepancies, however, do not establish the PCR court erred by denying defendant's petition.

Notably, the PCR court relied on trial counsel's testimony that calling Kurzweil may have been more harmful to defendant than helpful.  It was trial

A-0983-21

counsel's position that Kurzweil would be undermined on cross-examination and would "place defendant at the scene."

We stress that the ineffective-assistance-of-counsel test is not whether counsel's strategy was the best choice. Reviewing courts "must be highly deferential" to counsel's judgment and engage in a "strong presumption that counsel exercised reasonable professional judgment and sound trial strategy . . . ." State v. Loftin, 191 N.J. 172, 198 (2007) (internal quotation marks and citations omitted). Here, as the initial PCR court found, defendant's trial counsel's "choices clearly were strategically defensible." Accordingly, defendant has not shown that better briefing by his appellate PCR counsel would have altered the final result. In sum, any deficiency by defendant's appellate PCR counsel was not prejudicial. Thus, defendant has once again failed to establish a basis to vacate his convictions. See Fritz, 105 N.J. at 58.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0983-21