**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4446-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DERRICK MILLER,
a/k/a DERRICK MAURICE
MILLER, DEREK M. MILLER,
DERRICK MILLER, JR.,

    Defendant-Appellant.

_____

> Submitted May 6, 2020 – Decided May 26, 2020
>
> Before Judges Koblitz and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-08-1559.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
>
> Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Hannah Kurt,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Derrick Miller appeals from a March 29, 2019 order denying his petition for post-conviction relief (PCR). We affirm for the reasons set forth in Judge Marysol Rosero's thorough and well-written twenty-five-page decision.

In 2011, Miller and his co-defendant Arthur Thompson were indicted on the following eleven counts: second-degree conspiracy to commit robbery, N.J.S.A 2C:5-2 and 2C:15-1; first-degree robbery, N.J.S.A 2C:15-l; first-degree conspiracy to commit murder, N.J.S.A 2C:5-2 and 2C:ll-3(a)(l), (2); first-degree murder, N.J.S.A 2C:ll-3(a)(l), (2); first-degree felony murder, N.J.S.A 2C:11-3(a)(3); first-degree attempted murder, N.J.S.A 2C:5-l and 2C:ll-3; fourth-degree aggravated assault, N.J.S.A 2C:12-l(b)(4); second-degree conspiracy to commit burglary, N.J.S.A 2C:5-2 and 2C:18-2(b)(l); second-degree burglary, N.J.S.A 2C:18-2(b)(1); second-degree unlawful possession of a weapon, N.J.S.A 2C: 39-5(f); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A 2C:39-4(a). Following a jury trial, Miller was convicted on all counts.

On appeal, we affirmed Miller's convictions and his sentence, and recounted the underlying facts and evidence adduced at trial as follows:

Defendants' convictions arose out of a home invasion and murder that occurred on January 18, 2010, at a residence in Irvington . . . . The evidence at trial established that the home was a two-family house where an adult brother and sister lived with their respective families. The sister, M.B., lived on the first floor with her son, J.B., her daughter, and her boyfriend, the victim, A.H. The brother, D.B., lived on the second floor with his daughter, K.B., and his granddaughter.

In the late evening on January 18, 2010, M.B. heard a banging noise and gunshots. She locked herself in the bathroom and called 911. K.B. was doing homework in her living room on the second floor and she heard what sounded like glass shattering. She went downstairs and saw A.H. on his knees with two men standing on either side of him. One of the men had A.H. in a headlock and another man was pointing a gun at A.H. One of the men saw K.B. and pointed the gun at her, prompting her to retreat upstairs.

J.B. was in his downstairs bedroom when he first heard a banging noise. He then went to his door and saw a man hop over the counter into the kitchen area. He could not see the man's face, but he saw a gun in the man's hand. J.B. closed his bedroom door and heard a gunshot and then heard three more gunshots. He escaped by climbing out the window.

D.B. was upstairs in bed when he heard a scuffle erupt in the downstairs apartment. Upon going downstairs, D.B. saw two individuals in the home, one wearing a "netted mask" and pointing a gun at A.H. and another holding A.H. by the neck. The man pointed the gun at D.B. and told him to "get the fuck out of there." D.B. thereafter heard a gunshot and ran outside. As he hid behind bushes, he heard more gunfire and saw two

men get into a car and drive away. Prior to their departure, D.B. was able to see the face of one of the assailants.

Almost immediately, the police responded to the home. D.B. pointed in the direction of the car and exclaimed to the police that "the car is right there[,]" and "that's them, that's them." The responding police officer testified that he followed the car and pulled it over several blocks from the home. The males in the vehicle were later identified as Miller and Thompson. Thompson was arrested on an outstanding warrant at the scene. Miller stayed with the vehicle.

Shortly after pulling the car over, the police brought D.B. to the scene. When D.B. arrived, Miller was standing by the car in handcuffs. D.B. voluntarily identified Miller to the police, saying "[t]hat's him." D.B. initially said he identified Miller by his clothing, but then retracted this statement and testified that he did not tell the police at the time that he could identify Miller by his face because he feared for his family's safety. The detectives who escorted D.B. to the scene testified that neither of them said anything to D.B. during the ride over, and that D.B. made his statement voluntarily. One of the detectives prepared a report memorializing the positive identification, but failed to include the words D.B. used.

Back at the home, the police found A.H. lying dead on the basement floor, having been shot three times. The police conducted a series of follow-up investigations and tests involving DNA sampling, soil sampling, gunshot residue, and blood splattering.

Prior to trial, the defendants moved to suppress the out-of-court identification by D.B. Thompson also moved to dismiss the indictment and sever the trials.

4

After conducting a <u>Wade</u>[1] hearing and taking testimony, the court denied the defendants' motions. As to the motion to suppress, the court found that the show-up, although "inherently suggestive," was neither "necessarily impermissibly suggestive nor . . . necessarily subvert[ed] the reliability of the identification." The defendants failed to "show a scintilla of probative evidence relating to [suggestiveness] that would undermine the identification."

Thereafter, the court held a twelve-day jury trial. Among other evidence, the State proffered numerous witnesses and expert opinions, including a forensic scientist specializing in serology (the study of blood serum) and a forensic scientist specializing in DNA analysis. The serology expert found traces of blood on Miller's white thermal shirt and dark blue-gray pants. The State's forensic scientist analyzed the DNA samples from this clothing and concluded the blood on the clothing was that of the victim, A.H.

[<u>State v. Miller</u>, Nos. A-4022-12 and A-4055-12, slip op. at 7 (May 10, 2017).]

In 2019, Judge Rosero heard Miller's PCR petition, which raised seven grounds for post-conviction relief, and requested that the court hold an evidentiary hearing. Relevant to the issues raised on this appeal, Miller argued his trial counsel was ineffective because counsel failed to visit the scene of the crime, locate witnesses, and hire an investigator to locate and interview

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

witnesses who would exculpate him. Miller provided a statement from a former co-worker who stated Miller was with him and could not have committed the crimes with Thompson, which Miller alleged was the sort of alibi evidence his attorney failed to investigate. He also alleged his trial counsel coerced him into not testifying.

Judge Rosero rejected these arguments and found:

> [I]n regard to the alibi defense, the defendant points out trial counsel's failure to call [his alibi witness]. The defendant argues that . . . [the witness], whom provided a handwritten statement in support of this PCR petition, would have testified that at the time of the murder, the defendant was just getting off of work, and could therefore not have been at the scene of the crime when the alleged murder happened. . . .
>
> In support of his alibi claim, the defendant provided only a written statement by [the witness], and not an affidavit. Even assuming [the witness] would have testified in a manner consistent with his statement, that is, that they worked together and the defendant "went home at 10:15pm when his ride picked him up." [The witnesses]'s statement would have corroborated the State's evidence that someone, identified at trial as the co-defendant, picked the defendant up after work and went off to commit the crime as [the witness] was not with the defendant after the defendant was picked up. [The witness] would have place[d] the defendant close to the crime scene on the date and time of the offense. Additionally, on cross, [the witness] would not have been able to explain why the defendant fit the description of the assailant, and was arrested after the 911 call, in such close proximity to the time and place

6

of the incident, with the co-defendant, and with a stain of the victim's blood on his shirt.

As such, the [c]ourt finds that trial counsel was not ineffective by not interposing an alibi defense because [the witnesses]'s testimony would have corroborated the State's assertion that the defendant was picked up by the co-defendant at work, at around the time of the indictment, placing defendant in close proximity to the scene of the victim's home and giving him the opportunity to commit the alleged crime. This tactical decision by trial counsel did not constitute an error because calling . . . an alibi witness would have very well been more detrimental to the defendant than the omission of his testimony was. Hence, the defendant has failed to show that counsel's acts or omissions amount to more than mere tactical strategy. []State v. Davis, 116 N.J. 341, 357 (1989). As such, he has failed to establish a prima facie case under the Strickland[2] standard. Additionally, his claim is too speculative and a hearing would not aid the court as the issue can be resolved from the complete record.

Regarding Miller's claim that he was coerced into not testifying, the judge found:

[T]he defendant alleges that trial counsel advised him not to testify because "he had an [eighty-five percent] chance of winning and he would certainly be convicted if he testified." . . . A comprehensive review of the record shows nothing expressly or implicitly of any coercion by defense counsel. On the contrary, the record clearly establishes that defendant's decision not to testify was his. His waiver was knowingly,

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

voluntary, and without coercion. The trial record shows the following exchange:

> The Court: [Addressing defense counsel] [I]t's my understanding that Mr. Miller and Mr. Thompson have elected not to testify in their own defense; is that correct?
>
> [Miller's counsel]: That's my understanding, [j]udge.
>
> The Court: Mind if I voir dire them?
>
> [Miller's counsel]: No, [j]udge.
>
> The Court: Mr. Miller, you've been represented by [defense counsel] throughout this case—you can sit down, sir— . . . and you discussed the case, discussed the various defenses, so forth and so on. Now [counsel] tells me you've elected not to testify in you[r] own defense; is that correct?
>
> [Miller]: Yes.
>
> The Court: And has anybody forced you or coerced you, or pressured you, in any way to make that decision?
>
> Miller: No.
>
> The Court: You are doing that of your own free will?
>
> [Miller]: Yes.

The Court: After a full and complete consultation with [counsel]?

[Miller]: Yes.

The [d]efendant had the opportunity to notify the [j]udge that he was not making the voluntary and intelligent decision to waive his right to testify because he was being coerced by the trial counsel. Instead under oath, he told the [j]udge that he was not forced, coerced, or pressured in any way to make that decision, and that he was doing it of his own free will. As such, this [c]ourt finds that defendant's bald assertion that trial counsel was ineffective because he was coerced to waive his right to testify is not supported by the record, it is without merit, and as such, does not satisfy the first prong of the Strickland standard. The Court finds that based on the record, a hearing is not warranted as the defendant has not established a prima facie case under Strickland and there are no issues of material facts requiring a hearing.

Miller raises the following points on this appeal:

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CONDUCT AN ADEQUATE INVESTIGATION, SPECIFICALLY FOR NOT OBTAINING AN ALIBI WITNESS, AND FOR ABRIDGING DEFENDANT'S CONSTITUTIONAL RIGHT TO TESTIFY.

A.     Trial Counsel Failed To Conduct An Adequate Investigation, Specifically For Not Obtaining An Alibi Witness.

B.     Trial Counsel Abridged Defendant's Constitutional Right To Testify.

9

The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland, 466 U.S. at 686); see also State v. Fritz, 105 N.J. 42, 58 (1987). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, 466 U.S. at 687, which our Supreme Court adopted in Fritz, 105 N.J. at 58.

Under Strickland, a defendant first must show his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Counsel's performance is deficient if it falls "below an objective standard of reasonableness." Id. at 688.

A defendant also must show counsel's "deficient performance prejudiced the defense." Id. at 687. He or she must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Ibid.

A-4446-18T1

We review a PCR court's decision to proceed without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). A defendant is entitled to an evidentiary hearing if he or she presents a prima facie case supporting PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). The court must "view the facts in the light most favorable to a defendant . . . ." State v. Preciose, 129 N.J. 451, 462-63 (1992). A defendant "must do more than make bald assertions," and must instead "allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "[V]ague, conclusory, or speculative" allegations will not suffice. Porter, 216 N.J. at 355 (quoting Marshall, 148 N.J. at 158).

We agree with Judge Rosero's assessment that Miller's argument relating to the alleged failure to investigate and raise an alibi defense is a bald assertion. As the judge noted, defense counsel's pursuit of this alleged alibi would likely have strengthened the prosecution because Miller worked close to the crime

11

scene, was picked up from work by Thompson, and arrested in close proximity to the crime scene, which would have established it was feasible for Miller to be with the alibi witness and leave with enough time to commit his crimes. Miller's assertions regarding the alibi defense are speculative.

Finally, the record belies Miller's argument that he was coerced into not testifying. The trial judge carefully voir dired Miller, who clearly and unequivocally waived his right to testify. This argument is without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION