**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0983-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. CRUZ, JR.,

    Defendant-Appellant.

_____

Submitted September 15, 2020 – Decided November 4, 2020

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 96-10-0535.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jennifer E. Kmieciak, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Found guilty after twenty-one days of trial[1] on all indicted charges[2] in connection with the planned robbery and homicide of the proprietor of a check-cashing business,[3] defendant Luis A. Cruz, Jr. appeals from the order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. In his merits brief he argues:

POINT I

AS [DEFENDANT] HAS ESTABLISHED HE WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, THE PCR COURT ERRED WHEN IT DENIED PETITION FOR [PCR].

---

[1] A mistrial was declared after defendant's first trial, a capital murder case. After our Supreme Court rejected defendant's argument that he could not be retried for capital murder, State v. Cruz, 171 N.J. 419, 432-34 (2002), the second trial was held, but the State elected not to seek the death penalty.

[2] Indictment 96-10-0535 charged: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:11-3(a)(2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2; 2C:15-1; third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C: 39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C: 39-5(d).

[3] We affirmed defendant's convictions on direct appeal, but we vacated his sentence and remanded for resentencing. State v. Cruz, No. A-4078-02 (App. Div. Sept. 5, 2008); defendant did not appeal after resentencing. Our opinion on direct appeal sets forth the procedural history and facts of this case, and we will not repeat them except as they are germane to the arguments now considered.

(1)    The Trial Court Erred By Admitting Prejudicial Evidence About [Defendant's] Prior Conviction For Passing Bad Checks In Kentucky.

(2)    The Trial Court Erred In Admitting Improper Habit Evidence.

(3)    The Trial Court Erred When It Admitted Evidence That Co[d]efendant Pinto-Rivera Had Purchased Boots Prior To The Homicide.

(4)    The Trial Court Erred When It Admitted A Letter Written By [Defendant] To Co[d]efendant Pinto-Rivera.

(5)    The Trial Court Erred In Admitting Hearsay Testimony Regarding Investigation Of Another Suspect.

(6)    Appellate Counsel Was Ineffective By Relying On [Defendant] To Decide Whether To Raise The Points Identified By Trial Counsel.

(7)    Appellate Counsel Was Ineffective By Failing To Argue Cumulative Trial Court Error.

(8)    Appellate Counsel's Cumulative Errors Require That [Defendant] Be Provided A New Counsel To Present An Amended Direct Appeal.

In his pro se supplementary brief, defendant adds:

POINT I

THE PCR COURT FAILED TO CONSIDER, AND ADJUDICATE ALL CLAIMS FILED BY [DEFENDANT], A REMAND ON THOSE CLAIMS

3

IS REQUIRED, BECAUSE THIS VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH, SIXTH AND . . . FOURTEENTH, AMENDMENTS THERETO

POINT II

DEFENSE COUNSELS WERE INEFFECTIVE FOR NOT PURSUING AN EXCULPATORY STATE WITNESS TO TESTIFY, AND THE TRIAL COURT'S RULING, WHICH PRECLUDED AN EXCULPATORY STATE WITNESS FROM TESTIFYING, DENIED THE DEFENDANT HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO COMPULSORY PROCESS, TO PRESENT EXCULPATORY EVIDENCE, TO DUE PROCESS OF LAW AND TO A FAIR TRIAL AND DENIED THE DEFENDANT THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT III

THE TRIAL COURT'S FAILURE TO GIVE A LIMITING INSTRUCTION CONCERNING THE CO[]DEFENDANT'S GUILTY PLEA, ACTIONS, AND REFERENCES MADE OF HIM DURING THE TRIAL, DEPRIVED [DEFENDANT] OF THE RIGHT TO DUE PROCESS OF LAW, AND A FAIR TRIAL.

POINT IV

THE TRIAL [COURT'S] FAILURE TO PROVIDE A PROPER CORROBORATION CHARGE VIOLATED . . . DEFENDANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.

4

POINT V

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL ON THE GROUNDS THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

POINT VI

[THE DETECTIVE] FAILED TO PROPERLY INVESTIGATE INSTRUCT MONITOR AND SUPERVISE [CODEFENDANT].

POINT VII

DEFENDANT RECEIVED INEFFECTIVENESS ASSISTANCE OF COUNSEL ON DIRECT APPEAL.

POINT VIII

DEFENDANT'S CONVICTION WAS SECURED IN VIOLATION OF HIS STATE, AND FEDERAL CONSTITUTIONAL RIGHTS, BECAUSE UNDER THE NEW JERSEY SUPREME COURT'S HOLDING IN STATE V. A.G.D., 178 N.J. 56 (2003), DEFENDANT['S] WAIVER OF HIS STATE-LAW RIGHT AGAINST SELF-INCRIMINATION ON FEBRUARY 27, 1996, WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY PER SE, BECAUSE THE POLICE FAILED TO INFORM HIM THAT AN ARREST WARRANT HAD BEEN FILED OR ISSUED AGAINST HIM, AND HE DID NOT OTHERWISE KNOW THAT FACT. AS A RESULT, DEFENDANT['S] INCRIMINATING STATEMENTS FROM FEBRUARY 27, 1996 SHOULD BE SUPPRESSED, AND HIS CONVICTION REVERSED.

A.	DEFENDANT'S CLAIM IS NOT PROCEDURALLY BARRED UNDER R. 3:22-2.

B.	DEFENDANT'S CLAIMS ARE NOT PROCEDURALLY BARRED UNDER N.J.Ct.R. 3:22-5.

C.	THE PROSECUTOR'S OFFICE CALCULATED STRATEGIC DECISION TO CONCEAL ITS OBTAINING A COMPLAINT UPON A SHOWING OF PROBABLE CAUSE FROM DEFENDANT, DEPRIVED THE DEFENDANT OF KNOWLEDGE HE NEEDED TO KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY DECIDE TO WAIVE HIS CONSTITUTIONAL RIGHTS TO SILENCE AND TO THE GUIDING HAND OF COUNSEL.

D.	THE AUTHORITIES KNEW THAT [CODEFENDANT] WAS COMMITTING EXTORTION OF DEFENDANT, RENDERING HIS CONDUCT CRIMINAL, REQUIRING SUPPRESSION, AND THEIR CONTINUED DENIALS OF SUCH KNOWLEDGE UNDERMINE THE CREDIBILITY OF THE STATE'S WITNESSES, PROHIBITING A BEYOND A REASONABLE DOUBT FINDING IN FAVOR OF THE STATE.

We accord substantial deference to the PCR court's findings after an evidentiary hearing, particularly when they "are substantially influenced by [the

6

court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy," State v. Johnson, 42 N.J. 146, 161 (1964); see also State v. Elders, 192 N.J. 224, 244 (2007), as long as those findings "are supported by sufficient credible evidence in the record," but we review the PCR court's legal conclusions de novo, State v. Nash, 212 N.J. 518, 540-41 (2013). Through that lens, although we are unpersuaded by the arguments set forth in defendant's merits brief and affirm the PCR court's decision relative to those issues, we are constrained to remand the issues raised in defendant's pro se brief because the PCR court did not address them.

Inasmuch as defendant is arguing his appellate counsel failed to advance evidentiary errors purportedly made by the trial court, he must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

7

Based on appellate counsel's testimony at the PCR hearing that he felt the most effective appellate practice was to raise only issues that were sufficiently compelling to warrant reversal, the PCR court found "counsel's decision to not raise every issue amount[ed] to case strategy." The PCR court noted both appellate counsel and his superior, to whom defendant's trial counsel complained because appellate counsel would not include the appeal arguments he suggested, reviewed the appellate brief and concurred the arguments there included were optimal. The PCR court concluded: "Thus, the appellate case was reviewed by two experienced appellate attorneys who[] have years of experience arguing cases before the Appellate Division and found that the arguments raised were appropriate."

Defendant is entitled "to the effective assistance of appellate counsel on direct appeal." State v. O'Neil, 219 N.J. 598, 610-11 (2014). To that end, appellate counsel has a duty to "bring to the court's attention controlling law that will vindicate her [or his] client's cause." Id. at 612-13. But appellate counsel is not obligated to raise issues they know to be without merit. State v. Worlock, 117 N.J. 596, 625 (1990); State v. Gaither, 396 N.J. Super. 508, 515-16 (App. Div. 2007). The United States Supreme Court held appellate advocates must exercise professional judgment in winnowing potential issues on appeal,

selecting only "the most promising for review," and cautioned against judges "second-guess[ing] reasonable professional judgments" of appellate counsel. Jones v. Barnes, 463 U.S. 745, 752, 754 (1983).

The PCR court recognized that we follow the Court's guidance in holding an appellate counsel, unlike a PCR counsel, is not mandated to advance every argument a defendant desires to include in a direct appeal. Gaither, 396 N.J. Super. at 515. Our Supreme Court also instructed that "[a]n attorney is entitled to 'a strong presumption' that he or she provided reasonably effective assistance, and a 'defendant must overcome the presumption that' the attorney's decisions followed a sound strategic approach to the case." State v. Pierre, 223 N.J. 560, 578-79 (2015) (quoting Strickland, 466 U.S. at 689). Under those precepts, we agree with the PCR court that appellate counsel was not ineffective when he refrained from raising the grounds defendant now asserts.

I.

Defendant claims appellate counsel should have appealed the trial court's erroneous admission of evidence. If appealed, we would not have substituted our judgment on an evidentiary ruling unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

A-0983-18T4

Instead, we would have deferred to the trial court's decision "'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting Marrero, 148 N.J. at 484).

## A.

Defendant avers "the trial court allowed the State to introduce evidence of his prior conviction for passing [bad] checks in Kentucky." That evidence, however, was presented to the jury in the form of a stipulation by defendant and the State, and also included evidence elicited by defense counsel[4]—that defendant had passed other bad checks at a market in December 1995 and another bad check written on his mother's account. Contrary to defendant's contention in his merits brief, no objection was made at the second trial.

Nevertheless, the admission of evidence that defendant had been convicted in Kentucky for passing bad checks would not have been ruled an abuse of discretion. We note the trial court at the first trial (first trial court)

---

[4] Defense counsel introduced that evidence in a seeming effort to meet evidence presented by the State that defendant's father told him, after helping his son with the Kentucky charges, he would not offer further assistance if he subsequently passed bad checks. Defendant's father testified that, despite saying he would not help his son if he reoffended, he did make good on two of the checks written to the market.

A-0983-18T4

conducted a Rule 104 hearing in considering whether that other-crime evidence was admissible under N.J.R.E. 404(b). That ruling went unchallenged at the second trial, ostensibly settled by the stipulation; neither party points to a second hearing and we see none in the record. The reasons set forth by the first trial court in making its N.J.R.E. 404(b) ruling, analyzing the Cofield factors,[5] were reiterated by the State in the second trial, and illustrate why that evidence was admissible.

As evinced by the assistant prosecutor's summation, echoing the first trial court's findings supporting its oral decision to admit the other-crimes evidence, the State entered evidence that one of the conditions of probation imposed on

---

[5] Under State v. Cofield, 127 N.J. 328, 338 (1992), the party proffering evidence of a prior crime must prove:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

A-0983-18T4

defendant by the Kentucky court was that he refrain from any further uttering of bad checks. Defendant was still on probation when he tendered two checks to the victim. The State also contended defendant knew that his father, who spent around $5000 to assist his son in the resolution of the Kentucky charges, told him, in the father's words during trial testimony, "not to do it again" and that he was not going to help him again. The State further cited to defendant's knowledge that his father was leaving for Puerto Rico on the day after the homicide[6] and, as the assistant prosecutor stated in summation, was not "going to be around to get him out of the jam this time . . . [l]et alone the fact that the jam involves a lady" that had known defendant since he was about nine-years-old,[7] and who defendant's father had held in high regard for a long period of time.

Under these facts, the State argued that defendant hatched a plan to retrieve two bad checks he gave the victim. While telling his codefendant he was offered money to retrieve a deed from the victim's store, defendant really sought to retrieve the checks which unbeknownst to him, had already been deposited by the victim and dishonored by the bank.

---

[6] The date of the crimes was December 11, 1995.

[7] The judgment of conviction lists defendant's birthdate in February 1975.

"The admissibility of other-crime evidence is left to the [sound] discretion of the trial court[.]" State v. Covell, 157 N.J. 554, 564 (1999); see also Marrero, 148 N.J. at 483. "The trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process. Its decisions are entitled to deference and are to be reviewed under an abuse of discretion standard." State v. Ramseur, 106 N.J. 123, 266 (1987).

As the first trial court found, motive was "a hotly contested issue for which there [was] no common agreement" between the parties, especially considering it appeared no money was taken from the proprietor's cash register. The court perceived a jury could accept or reject defendant's statement to police—the admissibility and reliability of which was forcefully challenged by defendant—in which he asserted he was paid to retrieve a deed from the victim's place of business. But the first trial court also discerned that the jury could also accept the State's theory—proved in part by the father's testimony, deemed credible by the trial court—that defendant knew: his father had told him he would not help if he repeated his crime; he was subject to imprisonment in Kentucky for violating the condition of probation proscribing passing bad checks; and that, by tendering the bad checks to the victim, he would be "impairing his father's good work and relationship with someone [with whom both defendant and his

father had] a wonderfully long and close relationship, a mother figure."  The

first trial court recognized that investigating officers at the crime scene found

> the desk and the filing cabinet appear[ed] to be open or the stuff [was] distributed.  Also open was the lid of the box used by [the victim] to hold the checks she cashed and the money needed for cashing the checks and they note[d] the store's cash register was found to contain a large amount of cash and so the State conclude[d], and logically so, that the issue of the deed, putting that aside, and that the issue isn't that the jury is going to wonder, it's not the deed and robbers don't usually go in, in the typical traditional sense, to steal, and what do they steal, either goods or money or both and they left the cash register unattended by not taking the money in it, then what? That's a very logical issue that's going to remain in the psyche of the jury.

Observing case law established that a wider range of evidence is

admissible to establish motive,[8] the first trial court concluded the State's

evidence, which the judge found had clearly and convincingly been established,

"logically . . . tend[s] to show a motive," an issue deemed "pivotal" by the court.

The court also found defendant passed the bad checks to the victim close in time

to the homicide.  It also weighed the prejudicial impact of the evidence, finding

that "passing bad checks . . . doesn't have an inherently inflammatory potential

---

[8]  The court cited to <u>State v. Carter</u>, 91 N.J. 86, 102 (1982); <u>State v. Rogers</u>, 19 N.J. 218 (1955); and <u>State v. Crumb</u>, 277 N.J. Super. 311, 317 (App. Div. 1994).

as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the basic issues of the case." In accord with our Supreme Court's holdings,[9] the court did recognize the evidence was prejudicial to defendant, albeit "not unduly," but that if the jury accepted the State's proffered evidence, it was relevant and highly probative of motive.

In our judgment, the first trial court's comprehensive analysis of the Cofield factors and decision to admit the other-crimes evidence was unassailable. And the second trial court's twice-repeated instruction to the jury on the evidence's limited application allowed the jury to accept or reject the varied evidence in determining whether motive was established and, if so, what that motive was. We see no error in the admission of that evidence.

B.

We also see no abuse of discretion in the trial court's ruling that allowed, as habit evidence under N.J.R.E. 406, the codefendant's girlfriend to testify that

---

[9] See, e.g., State v. Loftin, 146 N.J. 295, 394 (1995) (concluding it was unlikely "that a juror would have been so affected by the sight of defendant engaging in the act of credit card fraud that she or he would have been moved to convict defendant of the violent crime of murder"); State v. DiFrisco, 137 N.J. 434, 497 (1994) (holding, where "defendant confessed to [an] execution-style killing, . . . the fact that defendant stole a car, committed a few traffic violations and yelled at his mother had very little tendency to divert the jurors' attention from their duties").

every time she was in the car with the codefendant, which she numbered at three or four, he "would just sit and take the [passenger] seat all the way back so you can never really tell if he was there [in the car] or not" as if he were "on the recliner."

Contrary to defendant's present claim, the trial court did conduct an evidentiary hearing outside the jury's presence at which codefendant's girlfriend testified on direct, cross and redirect examination. We reject both defendant's contention that the girlfriend's observations of codefendant were made while he was in "his chillin' mood," and thus were not applicable to instances where he was "planning a robbery or seeking to evade detection," and his argument that three to four observations were insufficient to establish habit.

Although she observed codefendant on only three or four occasions, her testimony established that his behavior was "semi-automatic" each time she was with him in a vehicle. See Sharpe v. Bestop, Inc., 158 N.J. 329, 331-32 (1999) ("[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." (quoting Thompson v. Boggs, 33 F.3d 867, 854 (7th Cir.

16

1994))); see also Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 190-91 (App. Div. 2006).

Codefendant's reclination was a "regular response to a repeated situation." State v. Radziwill, 235 N.J. Super. 557, 564 (App. Div. 1989); see also Sharpe, 158 N.J. at 330. The repeated situation was riding in a car, not riding in a car while "chillin'." Whether the jury accepted that codefendant acted in conformity with his usual pattern when he was involved in criminal behavior was a factual determination; it did not render the admission of that evidence an abuse of discretion.

Nor was the trial court's acceptance of the limited number of the girlfriend's observations as sufficient an abuse of discretion. The behavior in question was innocuous; it did not involve criminal or otherwise nefarious acts. In balance, we see no reason to disturb the trial court's ruling. Defendant's best evidence argument is without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

## C.

Defendant's challenge to the admission of the detective's testimony that codefendant purchased boots prior to the homicide was, likewise, an argument that would not have resulted in a reversal on appeal.

17

Boots were linked to the case because the blunt force trauma found on the victim's face included imprints that had characteristics of "ridged shoes." The detective quoted a portion of defendant's statement to police on redirect examination in which defendant claimed he heard that codefendant "threw away a pair of boots" after the homicide. After the detective responded affirmatively when the assistant prosecutor then asked if he investigated "boots" with codefendant, defense counsel requested a sidebar at which the assistant prosecutor explained he was trying to show the police searched for clothing, including footwear during the follow-up investigation. Because the boots were never found, the State wanted to show a receipt from a catalog order codefendant placed nineteen days prior to the homicide.

The trial court allowed limited testimony that: the detective and another person searched for the boots but did not find them; further inquiry uncovered a sales receipt that showed codefendant bought a pair of boots "a couple of weeks" before the date of the homicide; and that there was no forensic link between the boots and the homicide.

Although the testimony was of dubious relevance because there was no link between the imprint found on the victim and the boots ordered by codefendant, that same fact neutered the prejudicial impact of that evidence to

defendant.  Moreover, the medical examiner testified each one of the thirteen stab wounds the victim suffered—which defendant admitted he inflicted—could have been fatal, blunting the impact of the boot evidence.

D.

We see no merit to defendant's argument that the trial court improperly admitted a letter defendant sent to codefendant to establish the two were friends. The letter reads:

> What is going on crazy man? Look I told you the attorney, and the judge, and the prosecutor said, "No." They want you here until Tuesday. They are mad because you didn't say anything. So take it easy, okay? Do not get in any more trouble like last time. These people want to give me the death penalty. But let G[-]d's will be done. G[-]d bless you, Louis.

Defendant argues there was no valid reason to admit the letter because it was undisputed the sender and receiver were friends.

The State need not have limited its proofs.  And, the State charged that "[t]here has been an inference if not direct assertions or questions on cross[-examination] that [defendant and codefendant] really don't have a, quote/unquote, relationship or are not, quote/unquote, friends or don't hang out together."  Defendant does not contest that cross-examination raised such issues.

The trial court found compelling the familiar term by which defendant addressed codefendant in the letter: "crazy man," a "thread [that was evident] throughout the conversations between" the two during consensually intercepted conversations in which the two referred to each other as "Loco" and "Crazy Man." The court thus found the letter relevant for the limited purpose of showing the relationship between the two. The court properly exercised its discretion.

In his merits brief, defendant echoes the arguments made by PCR counsel that the letter was prejudicial because it allowed the jury to infer: the State was angry because codefendant did not cooperate against defendant; the two were colluding about their testimony; and the State had considered the death penalty. We determine those arguments are without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

E.

We look askance at defendant's next argument that repeats that made in defendant's brief to the PCR court:

> [T]he defense presented the testimony of Dennis Nelson who testified that while he was in the Gloucester County Jail[,] a person by the name of Alcides Morales admitted that he committed this murder and that someone else was charged. If true, this

20

would show [defendant's] confession to have been false.

Without citing to any portion of the transcript,[10] defendant's merits brief simply refers to that page of the brief submitted to the PCR court in arguing the trial court erred by allowing the State to rebut defendant's third-party guilt evidence by calling a detective who "testified that he investigated Morales and found he had an alibi as he had been staying about [one hundred and fifty] miles [from the homicide scene] at the time of the incident. Defense counsel objected that [the detective] was stating a conclusion about the alibi and not fact" and that "there was no hearsay exception" to allow that testimony. Then, citing generally to over sixty pages of transcript, defendant asserts "[t]he trial court disagreed and allowed [the detective] to testify that he had interviewed several witnesses who supported Morales'[s] alibi."

The record, however, reveals the trial court ruled, after a Rule 104 evidentiary hearing, the State could "ask questions regarding [the detective's] investigation, but certainly not the status of it." A review of the detective's rebuttal testimony reveals he did not interject any hearsay testimony, and

---

[10] Rule 2:6-2(a)(6) requires that every point appellant raises on appeal must include a citation to "the place in the record where the opinion or ruling in question is located."

A-0983-18T4

defense counsel did not object to any question ultimately asked by the assistant prosecutor or the answers the detective gave.[11] The detective testified on direct examination: he interviewed Morales; investigated his whereabouts in December 1995; obtained documents from Morales containing information regarding a government agency in Connecticut; contacted a caseworker at that government agency and a Morales family member about Morales's whereabouts; signed a complaint-warrant against Morales, who was ultimately convicted of "falsely incriminating another"; and, prior to March 1, 1996, Morales was not charged with homicide. All other testimony from the detective was elicited by defense counsel. We see no hearsay that was elicited by the State; and we will not go mudlarking through the record to find that which, contrary to the Rules, is not brought to our attention by defendant

## II.

We thus conclude none of the issues defendant claims should have been argued on direct appeal had any merit, and appellate counsel was not ineffective when he exercised his professional judgment and selected only those arguments

---

[11] At one point, defense counsel interrupted a partial question asked by the assistant prosecutor and suggested a different form of question that was ultimately asked after a second sidebar conference clarified the wording that was acceptable to the defense.

A-0983-18T4

he, and his superior, deemed auspicious. And, for the same reasons, we reject defendant's contention that appellate counsel was ineffective by failing to assert cumulative error. Those informed "strategic choices" made by counsel are not subject to challenge. Strickland, 466 U.S. at 690; see also O'Neil, 219 N.J. at 616. In short, defendant did not meet the first prong of the Strickland-Fritz standard. Strickland, 466 U.S. at 687, 691-92; see also Fritz, 105 N.J. at 52.

III.

We also determine defendant failed to satisfy the second Strickland-Fritz prong by showing that the failure to include the issues on appeal would have probably affected the outcome. Strickland, 466 U.S. at 687, 691-92; see also Fritz, 105 N.J. at 52. Not only did defendant admit to police in a Mirandized statement—which we upheld on direct appeal—he inflicted multiple stab wounds to the victim, he also admitted the murder to codefendant, and tried to buy codefendant's silence during consensual intercepts.

Even if appellate counsel was ineffective by failing to include defendant's now-proffered arguments—which, as explained, we do not determine—those issues would not have overcome the overwhelming evidence that defendant murdered the victim.

23

IV.

We determine defendant's remaining merits brief arguments to be without sufficient merit to warrant discussion. R. 2:11-3(e)(2). Though appellate counsel consulted with defendant as he was obligated, Gaither, 396 N.J. Super. at 514, counsel clearly decided the issues that would be made on direct appeal.

V.

As the State concedes in its supplemental letter brief submitted in response to defendant's pro se supplementary brief, the PCR court did not consider the arguments advanced by defendant in his pro se brief to the PCR court.

The PCR court was required to address all arguments, Rule 3:22-11, including those made directly by a defendant. We, therefore, remand this matter to the PCR court to consider defendant's pro se arguments, and submit an opinion or memorandum in compliance with Rule 1:7-4(a).

Affirmed in part and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0983-18T4