**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3055-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RAYMOND PAGAN,
a/k/a REYMOND PAGAN,
RAYMOND C. PAGAN,
and REYMOND C. PAGAN,

      Defendant-Appellant.

_____

Submitted October 16, 2024 – Decided November 4, 2024

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-04-1216.

Jennifer N. Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Raymond Pagan appeals from a March 15, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Having reviewed the record in light of the applicable legal standards, we affirm.

I.

Defendant raises the following sole issue on appeal:

> THE PCR JUDGE'S CONCLUSION THAT DEFENDANT DID NOT PRESENT A PRIMA FACIE CASE OF INEFFECTIVENESS BECAUSE HIS ATTORNEY'S FAILURE TO OBJECT TO THE TEXT MESSAGE EVIDENCE DID NOT RESULT IN PREJUDICE WAS ERROR WHERE COUNSEL'S TRIAL STRATEGY DID NOT CONSIDER THE PERVASIVE IMPACT THE TEXT MESSAGES WOULD HAVE ON THE JURY'S DELIBERATIONS.

In 2018, a jury convicted defendant of first-degree aggravated manslaughter, first-degree robbery, second-degree possession of a weapon for an unlawful purpose, and certain persons not to have a weapon. He was sentenced in the aggregate to fifty years' of imprisonment. The details underlying those convictions are set forth in our prior opinion and need not be repeated here. See State v. Pagan, No. A-0315-18 (App. Div. May 26, 2021) (slip op. at 2-7).

Pertinent here, on September 27, 2015, Camden County police were dispatched to the Cramer Hill section of Camden after receiving a report about a shooting. The victim, Jose Franco, was found lying on the ground in a pool of blood. Franco was transported to Cooper University Hospital, where surgery was performed in an attempt to save his life. However, the next day, Franco died from his injuries. An autopsy was performed, which revealed he died of a gunshot wound to the chest.

Officer Lissandra Sime and Detective Sean Miller were dispatched to the hospital to investigate the report of an individual, co-defendant Samuel Lopez, who came to the emergency room with a gunshot wound to his left thigh. According to Lopez, he was the victim of a robbery. He appeared nervous. Lopez responded evasively to questions and provided inconsistent accounts when asked about details of what happened. Officer Sime overheard Lopez state to a family member, "[t]hat mother[-]fucker [Franco] is shot and I'm just going to walk out of here with a cast on."

The police seized one of Lopez's two cell phones and clothing at the hospital. The bullet holes and powder burn markings indicated a gun had been discharged from inside his left pants pocket. Lopez is left-handed.

3

The detectives spoke to Franco's mother and cousin and obtained video surveillance footage from a restaurant located approximately two blocks from the crime scene. The video showed Franco crossing a nearby street followed by two men wearing dark hooded clothing, which concealed their faces, and gloves. One suspect wore sneakers with distinctive black and blue markings. The other suspect had a large beard. Franco's cousin advised the detectives that the victim had visited him until approximately 11:00 p.m. on the night of his death and described the route the victim typically walked to the cousin's house.

The detectives canvassed the area for witnesses and learned the owner of a liquor store reported two individuals loitering across the street at the time of the shooting. The detectives observed blood on the sidewalk where the shooting took place. Two other witnesses told detectives they saw two "skinny males" wearing dark clothing with their hoods pulled up standing over a third male who was lying face down on the ground.

The detectives obtained and executed a warrant to search Lopez's residence, where they recovered a pair of black and blue Nike high top sneakers consistent with the pair he was wearing on the night of the murder and his other cell phone. Lopez admitted the sneakers were his and told the detectives that he is left-handed and shoots with his left hand. Lopez also told the detectives he

4

was approached in the McGuire area of Camden by two males, one black and one Hispanic, who attempted to rob him and was shot in the process.

The detectives also obtained security video from the hospital documenting Lopez's arrival and treatment, from which they confirmed his physical build and clothing. The security video also showed Lopez arriving in a vehicle registered to defendant's girlfriend, Nancy Torres. A few days later, defendant told Torres that Lopez got his gunshot wound when the two of them were "robbing in Cramer Hill."

Thereafter, under Indictment 16-04-1216, defendant and Lopez were charged with first-degree felony murder, N.J.S.A. 2C:11-3(a) (count one); first-degree knowing/purposeful murder, N.J.S.A. 2C:11-3(a)(1)[-](2) (count two); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count three); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)[1]

---

[1] Recently in the case of Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin, No. 3:18-CV-10507-PGS-JBD (D.N.J. Jul. 30, 2024), the federal court addressed the constitutionality of this statute. The matter is currently being appealed to the United States Court of Appeals for the Third Circuit. We have previously held that defendants who did not apply for a permit do not have standing to challenge the statute on grounds that it is not constitutional. State v. Wade, 476 N.J. Super. 490 (App. Div. 2023).

(count five); and criminal possession of a firearm contrary to N.J.S.A. 2C:39-7(b) (count six).

A communications data warrant was obtained and executed on Lopez's two cell phones, which revealed he was in the area in question on the date of Franco's homicide and had "numerous" communications with defendant. Data also showed that defendant's cell phone was in the area at the time of Franco's homicide. Defendant moved to suppress any evidence the police obtained from the warrantless search of Lopez's two cell phones that contained messages exchanged between them, Torres's statement, and defendant's cell phone, on the basis the police lacked probable cause to seize the cell phones.

Following a hearing, the motion judge denied defendant's motion to suppress, finding there were exigent circumstances that justified the warrantless seizure of the cell phones because potential evidence could have been destroyed before a warrant was obtained. The motion judge found the officers established probable cause to seize Lopez's cell phone at the hospital on the night of the homicide because they thought he was involved in criminal activity. Defendant's and Lopez's cases were severed and tried separately.

At defendant's trial, the State presented text messages between defendant and Lopez from the night of the shooting. Lopez testified on defendant's behalf.

6

Lopez claimed the text messages were about selling marijuana. According to Lopez, he met with defendant for "five to ten minutes around 9:[00] p.m." on the night of the shooting but did not see him again that night. After Lopez was shot, he testified he called defendant to ask him to call an ambulance, and Torres transported Lopez to the hospital.

Detective Sean Miller testified that he observed black jeans along with black and blue sneakers on the floor of Lopez's hospital room. Detective Miller verified the bullet hole in Lopez's jeans was consistent with a gun being fired from the inside of his pocket.

The jury returned a guilty verdict against defendant on all counts except first-degree murder because the jury found him guilty of the lesser included offense of aggravated manslaughter. Defendant filed a direct appeal from his convictions and sentence. We affirmed defendant's convictions and sentence. State v. Pagan, No. A-0315-18 (App. Div. May 26, 2021). The Supreme Court denied defendant's petition for certification. State v. Pagan, 248 N.J. 553 (2021).

Thereafter, in November 2021, defendant filed a timely pro se petition for PCR and was later represented by counsel. On February 22, 2023, the PCR court heard argument on defendant's PCR petition and reserved decision.

7

On March 15, 2023, the PCR court denied defendant's petition for PCR in an oral opinion without an evidentiary hearing. In its opinion, the PCR court addressed the three arguments defendant had presented in support of his petition. Specifically, defendant contended that his trial counsel was ineffective in: (1) failing to present any expert or fact witnesses from defendant's list to testify at trial; (2) failing to object to cumulative errors by the trial court; and (3) failing to object to the admission of certain evidence at trial. Primarily, defendant argued trial counsel was ineffective for failing to object to the admission of the text messages with Lopez. Defendant also contended that his appellate counsel was ineffective for not raising the issue of trial counsel's failure to present any expert or fact witnesses from defendant's list to testify at trial on direct appeal.

After analyzing each of those arguments, the PCR court found there was no prima facie showing of ineffective assistance of trial or appellate counsel because defendant did not identify who the fact and expert witnesses were who should have been called to testify on his behalf. The PCR court also determined defendant did not establish a prima facie claim that he was prejudiced because the text messages were properly admitted under N.J.R.E. 803(b)(5). Specifically, the PCR court noted that Lopez's counsel raised this issue on appeal, and we rejected the argument. State v. Lopez, No. A-1210-19 (App.

Div. Sept. 23, 2020) (slip op. at 6). The PCR court found defendant failed to show how trial counsel's performance was deficient or that he was denied a fair trial because there was no reasonable probability the outcome would have been different had counsel objected to the text messages.

A memorializing order was entered. This appeal followed.

## II.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong <u>Strickland</u> test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987) (adopting the two-prong <u>Strickland</u> test in New Jersey). Under prong one, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

A petitioner is not automatically entitled to an evidentiary hearing merely by filing for PCR. <u>State v. Porter</u>, 216 N.J. 343, 355 (2013); <u>State v. Cummings</u>,

9

321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if: (1) he or she establishes "a prima facie case in support of [PCR]," (2) "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief." Porter, 216 N.J. at 354 (quoting R. 3:22-10(b)) (alteration in original).

In making that showing, a defendant must "demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997); see also R. 3:22-10(b). Thus, to obtain an evidentiary hearing on a PCR petition based upon claims of ineffective assistance of counsel, a defendant must make a showing of both deficient performance and actual prejudice. State v. Preciose, 129 N.J. 451, 463-64 (1992).

Having conducted a de novo review of the record, we are satisfied that the PCR court correctly denied defendant's petition. In analyzing defendant's claims of ineffective assistance of trial and appellate counsel, the PCR court made adequate findings of fact and conclusions of law on each of defendant's contentions.

Defendant asserts the PCR court erred by not finding his trial counsel's failure to object to the admissibility of the text messages may have impacted the jury in their deliberations. Defendant also argues the PCR court erred in not finding his appellate counsel was ineffective for not raising the issue on direct appeal. We reject these arguments because the PCR court also found that the text messages were properly admitted. Moreover, the PCR court determined evidence of the conspiracy was introduced by the State separate from the text messages based on the same witness testimony and video footage of defendant and Lopez.

Defendant avers trial counsel was ineffective in failing to object to the admissibility of the text messages on hearsay grounds. Statements made by a co-conspirator are admissible against all conspiracy members under N.J.R.E. 803(b)(5) if the State meets the following conditions:

> "(1) the statement must have been made in furtherance of the conspiracy; (2) the statement must have been made during the course of the conspiracy; and (3) there must be 'evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it.'"

> A statement is considered to have been made "in furtherance of the conspiracy" if the statement "serves a 'current purpose such as to promote cohesiveness,

provide reassurance to a coconspirator or prompt one not a member of the conspiracy to respond in a way that furthers the goal of the conspiracy.'"

State v. Canfield, 470 N.J. Super. 234, 322 (App. Div. 2022), aff'd as modified, 252 N.J. 497 (2023).

As for the third element, "[t]he trial court must make a preliminary determination of whether there is independent proof of the conspiracy." Id. at 334. "[T]he trial court must determine whether there is independent evidence 'substantial enough to engender a strong belief in the existence of the conspiracy and of [the] defendant's participation.'" "The requisite independent evidence may take many different forms, 'such as books and records, testimony of witnesses, or other relevant evidence. There may be a combination of different types of proof.'" Ibid. "[T]he prosecution has the burden of satisfying the third part of the test by a fair preponderance of the evidence." Ibid.

Defendant argues that the text messages were "unreliable" as the independent evidence was not "substantial enough" to evoke a "strong belief" that a conspiracy existed between defendant and Lopez to rob people in the Cramer Hill section of Camden.[2] However, as we noted in our decision in this matter, the text messages were properly admitted as statements by a party-

---

[2] Defendant claims that there was no evidence from the State and eyewitnesses connecting him with Lopez and to the crime scene.

opponent under N.J.R.E. 803(b)(1) and statements by a party-opponent in the course of planning the robbery here under N.J.R.E. 803(b)(5).  Pagan, slip. op. at 30.

Moreover, as we decided in State v. Lopez,[3] these text messages were admissible under N.J.R.E. 803(b)(5) for the reasons expressed by the trial court in its comprehensive oral decision.[4]  Viewed in context, there is no question the text messages here were made during and in furtherance of the conspiracy, and therefore, fall within N.J.R.E. 803(b)(5) as we already considered and addressed on direct appeal.  Pagan, slip op. at 30-31.  Defendant advances no more than bald assertions to the contrary.  Having conducted a de novo review, we agree defendant did not show prejudice.

---

[3] No. A-1210-19 (App. Div. Sept. 23, 2020) (slip op. at 6).  Prior to our decision, we remanded Lopez's case after finding that the trial court did not analyze the correct test for determining whether certain text messages should have been admitted into evidence under the co-conspirator exception to the hearsay rule. Id. at 3.

[4] On remand, the trial court found that the text messages were admissible under N.J.R.E 803(b)(5) since there was sufficient independent evidence of a conspiracy between defendant and Lopez on the record at trial.  Lopez, No. A-1210-19 (App. Div. Sept. 23, 2020) (slip op. at 3).

B.

Defendant also argues that appellate counsel did not raise this issue[5] on direct appeal, thus, claiming that there was ineffective assistance of appellate counsel. The right to effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. State v. O'Neil, 219 N.J. 598, 610 (2014). To obtain a new trial based on ineffective assistance of appellate counsel, a defendant must establish that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. See State v. Echols, 199 N.J. 344, 361 (2009).

Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced defendant because the appellate court would have found either, that no error had occurred or that it was harmless. See State v. Harris, 181 N.J. 391, 499 (2004). Consequently, appellate counsel is not required to raise every possible issue and need only raise issues that have a reasonable possibility of success. State v. Gaither, 396 N.J. Super. 508, 515-16 (App. Div. 2007).

---

[5] The record shows defendant raised the admissibility issue in his pro se brief. Pagan, slip op. at 9.

A-3055-22

Notwithstanding the fact that defendant's trial and appellate counsel did not raise the admission of the text messages at trial or on direct appeal, defendant himself raised the issue in his pro se merits brief on appeal. The point heading read:

> THE TRIAL COURT'S IMPROPER ADMISSION OF THE TEXT MESSAGES BETWEEN DEFENDANT AND HIS CO-DEFENDANT WITHOUT CONDUCTING A PROPER ANALYSIS OF THE EVIDENCE DEMANDS REVERSAL OF . . . DEFENDANT'S CONVICTION.

The PCR court correctly noted that our decision in Lopez's appeal was "persuasive" in the matter under review. The PCR court highlighted that we remanded the Lopez matter back to the trial court to conduct an analysis as to whether the statements were made "in furtherance of and during the course of the conspiracy." Lopez, slip. op. at 3. As we found in Lopez, the State introduced evidence of the conspiracy independently from the text messages. Lopez, slip. op. at 5. Moreover, eyewitness testimony and video footage of defendant and Lopez confirmed their whereabouts and actions at the time of the homicide.

Thus, there was ample evidence at trial to establish a conspiracy here. In that regard, we agree with the PCR court's analysis that there was substantial credible evidence in the record to establish a conspiracy, and the State met its

15

burden of proof beyond a reasonable doubt. Defendant has made no showing that either his trial or appellate counsel's failure to raise the issue of the admission of the text messages prejudiced him at trial.

In summary, our de novo review has satisfied us that defendant failed to make a prima facie showing of ineffective assistance of trial or appellate counsel on any grounds that he identified in his petition in support of his PCR application. Therefore, defendant was not entitled to an evidentiary hearing, and we affirm the order denying his PCR petition. State v. Goodwin, 173 N.J. 583, 602 (2002) (holding that a defendant who fails to present a prima facie claim for ineffective assistance of counsel is not entitled to an evidentiary hearing).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3055-22