**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1478-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANGEL RUEDA-DREGE,
a/k/a ANGEL QUEDA,

    Defendant-Appellant.

_____

Submitted May 28, 2026 – Decided June 26, 2026

Before Judges Mayer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-02-0570.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Angel Rueda-Drege appeals from an October 1, 2024 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

On October 28, 2017, defendant confronted Artemio Arce (decedent) on North 12th Street in Newark. Witnesses heard a gunshot and saw decedent running on North 12th Street and then falling to the ground. According to his girlfriend at the time, before he collapsed, decedent identified defendant as the shooter. Decedent later died from a gunshot wound.

After the shooting, defendant contacted the Essex County Prosecutor's Office (ECPO). At the ECPO, detectives advised defendant of his Miranda[1] rights in Spanish, defendant waived his Miranda rights, and defendant gave a statement to the ECPO detectives. Defendant told the ECPO detectives that decedent and three gang members approached him. Defendant claimed one of the gang members shot at him, missed, and instead shot decedent.

Surveillance video footage from North 12th Street depicted an individual resembling defendant running from the area around the time of the shooting. Additional footage showed decedent walking, and later running, on North 12th

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1478-24

Street. No other males were seen in any video footage obtained in the area from the time of the shooting.

On February 16, 2018, an Essex County grand jury indicted defendant, charging him with first-degree murder, second-degree unlawful possession of a handgun, and second-degree possession of a weapon for an unlawful purpose. Defendant retained private counsel. However, that attorney subsequently withdrew from representation of defendant. In June 2019, the court appointed a public defender to represent defendant. The public defender represented defendant at the eventual plea and sentencing hearings.

At a December 3, 2019 plea hearing, with the aid of a Spanish interpreter, defendant pleaded guilty to first-degree aggravated manslaughter and second-degree unlawful possession of a weapon.

The judge specifically asked defendant if he understood a guilty plea would have "an impact on whether or not [defendant] would be deported at the end of [his] sentence." Defendant responded: "Yes." The judge also asked if defendant understood he was pleading guilty to an "aggravated felony, and that under federal law, [defendant] would be subject to deportation." Defendant again responded: "Yes." The judge inquired if defendant had "sp[oke] to an immigration attorney about the status of this plea?" Defendant replied: "Yes.

That's been discussed several times . . . I've been around there about . . . three times already."

At the plea hearing, plea counsel clarified: "[Defendant] did not want to consult with an immigration attorney. He wanted to proceed. He felt like he was . . . aware of what was going to happen" if he were to plead guilty. Plea counsel told the judge he "explain[ed] to [defendant] . . . that [defendant] could still be removed, he could still be deported . . . and [defendant] indicated that he understood all of that . . . clearly." Plea counsel further explained he told defendant to "assume that [he] would be [deported]."

According to the prosecution, defendant entered the United States from Cuba and was previously arrested by Immigration and Customs Enforcement. Based on this information, the judge informed defendant that his guilty plea "could affect [his] ability to re-enter the United States if [he] were to leave the county" and would also "affect [defendant's] ability to apply for U.S. citizenship or any other form of residency in the future." Defendant stated he understood. The judge further explained he "ha[d] no jurisdiction or control over any decisions made by a federal court regarding [defendant's] deportation, [his] ability to re-enter the United States, or [his] application for U.S. citizenship, or any form of residency." Defendant responded he understood. After this

A-1478-24

colloquy, the judge determined defendant "fully underst[ood] the potential consequences of a guilty plea in terms of his immigration status."

The judge then asked if defendant was satisfied with the legal services provided by his plea counsel. Defendant replied: "Yes." When the judge inquired if defendant had enough time to review the matter with counsel, defendant responded: "Yes." Defendant told the judge he did not require any additional time to review or discuss the matter with his plea attorney.

The judge confirmed defendant understood the State's recommendation as to the sentence. The judge also established defendant reviewed the plea form with his attorney, through a Spanish interpreter, and found that defendant understood the document. Before accepting a guilty plea, the judge found defendant "had the advice of very competent counsel with whom he [wa]s fully satisfied, and [defendant]'s entering his plea of guilty freely and voluntarily." The judge also determined defendant was not under the influence of any substances, fully comprehended the nature of the proceeding and the charges, and understood the waiver of his rights.

The same judge sentenced defendant. The same defense counsel assigned to represent defendant at the plea hearing also represented defendant at the sentencing hearing.

 A-1478-24

At sentencing, defense counsel asked the judge to consider that defendant was fifty-five years old, had only a ninth-grade education, and expressed remorse for the killing. Defendant's attorney cited defendant's familial relationship with his then-girlfriend, who is decedent's ex-girlfriend and is the mother of decedent's children, and explained defendant helped care for her children. The defense attorney emphasized defendant's age and the "very real likelihood that [defendant] will never see the light of day again." For these reasons, defendant's attorney argued defendant should be sentenced to seventeen years instead of the State's recommended eighteen-year prison term. Counsel did not argue for any mitigating factors under N.J.S.A. 2C:44-1(b).

The prosecutor maintained the eighteen-year sentence was appropriate, noting defendant's "six prior indictable convictions." The prosecutor explained the eighteen-year sentence was "slightly below the mid-point of aggravated manslaughter" and, based on defendant's criminal history, argued against "further departure from that number." The prosecutor asked the judge to apply aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), and (9), and argued there were no applicable mitigating factors.

In sentencing defendant, the judge assessed the aggravating and mitigating factors under N.J.S.A. 2C:44-1(a) and (b). The judge considered defendant's

prior indictable convictions, including convictions for unlawful possession of a handgun, parole violations, possession of controlled dangerous substances, and first-degree robbery. The judge found aggravating factors three, six, and nine applied, highlighting the risk defendant would commit another offense, the extent of defendant's criminal record, and the need to deter defendant and others from violating the law. The judge found no mitigating factors applied.

The judge sentenced defendant to eighteen years with an eighty-five percent period of parole ineligibility on the first-degree aggravated manslaughter charge and a concurrent seven years with forty-two months of parole ineligibility on the unlawful possession of a weapon charge. The judge dismissed the possession of a weapon for an unlawful purpose charge. Defendant did not file a direct appeal from his convictions or sentence.

Defendant filed a timely PCR petition. Defendant's PCR attorney argued defendant's private attorney failed to fully investigate a possible self-defense theory. PCR counsel also argued defendant's public defender failed to discuss potential immigration consequences with defendant in the event he elected to plead guilty. Additionally, defendant's PCR attorney argued the public defender should have presented evidence of mitigating factors at sentencing.

A-1478-24

The PCR judge, who was the same judge who handled defendant's plea and sentencing hearings, found defendant's arguments regarding private counsel did not "hold a lot of weight since [private counsel] was not representing [defendant] for a substantial period of time prior to [defendant's] plea and even more so, prior to [defendant's] sentencing." Regarding the failure of private counsel to investigate a potential self-defense theory, the judge explained defendant failed to provide an affidavit or certification from individuals with personal knowledge supporting defendant's version of events leading to the shooting. The judge concluded there was no way to assess "whether or not counsel failed to properly investigate [defendant's self-defense] assertion."

Regarding the public defender's alleged failure to discuss the potential immigration consequences of a guilty plea, the judge recalled confirming defendant's full understanding of the consequences of a guilty plea, including possible deportation. The judge also recollected that defendant's attorney discussed the potential immigration consequences with defendant during the plea hearing. Thus, the judge found "there was no misrepresentation, [and] nothing false or misleading about the advice" from defendant's public defender.

In addition to reasons placed on the record at the conclusion of the PCR hearing, the judge issued a forty-eight-page written decision articulating his

reasons for denying defendant's petition. The judge reiterated defendant failed to provide any support for his self-defense theory. Additionally, the judge found defendant received proper legal advice regarding the potential immigration consequences of a guilty plea and understood that advice. He also noted defendant expressed satisfaction with the legal services he received. The judge rejected defendant's arguments regarding his private attorney's alleged failure to obtain pretrial discovery, file pretrial motions, or hire a private investigator.

The PCR judge also rejected defendant's claim that his public defender should have presented evidence supporting application of mitigating factors at sentencing. The judge explained mitigating factors three and four would not have applied because the uncontroverted evidence showed "[d]ecedent did not strongly provoke [defendant] to shoot him" and, therefore, there was no excuse for defendant's conduct. Additionally, the judge found mitigating factor eleven did not apply because the presentence report indicated defendant was unmarried, had two adult children, and one of those adult children lived with defendant's elderly mother. Therefore, the judge found "[d]efendant's family situation was not beyond the heartland of other cases."

9

Because he failed to establish a prima facie claim of ineffective assistance of counsel, the judge concluded defendant was not entitled to an evidentiary hearing.

On appeal, defendant raises the following argument:

> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE PRETRIAL BY FAILING TO INFORM HIM OF THE DEPORTATION CONSEQUENCES OF HIS PLEA, IN ADDITION TO OTHER PRETRIAL FAILURES, AND AT SENTENCING.

We review a judge's decision to deny a PCR petition without an evidentiary hearing de novo. State v. Harris, 181 N.J. 391, 419 (2004).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014). To succeed on a claim of ineffective assistance of counsel, a defendant must meet the two-part test under Strickland v. Washington, 466 U.S. 668, 687 (1984), as adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

Under this two-part test, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel'

10

guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Counsel's performance is deficient if it "f[a]ll[s] below an objective standard of reasonableness." Id. at 688. A defendant also must show that counsel's "deficient performance prejudiced the defense" because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694.

When a defendant "claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

The right to the effective assistance of counsel extends to legal assistance regarding the entry of a guilty plea. See State v. Gaitan, 209 N.J. 339, 350-51 (2012) ("It is well established that the Strickland standard applies with equal force to assertions of ineffective assistance of counsel associated with the entry of guilty pleas. . . ."). In addition, the right to effective counsel extends to counsel's adequate investigation and assistance at a defendant's sentencing. State v. Porter, 216 N.J. N.J. 343, 352 (2013) ("An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial

investigation." (citations omitted)); see also State v. Hess, 207 N.J. 123, 154 (2011) (recognizing that at sentencing "the failure to present mitigating evidence or argue for mitigating factors" may constitute ineffective assistance of counsel).

Regarding plea agreements, a counsel's performance is not deficient if "a defendant considering whether or not to plead guilty to an offense receives correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 20 (App. Div. 2012) (citing State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009)). To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'" Gaitan, 209 N.J. at 351 (alteration in original) (internal quotation marks omitted) (quoting Nuñez-Valdéz, 200 N.J. at 139).

In the context of plea negotiations, where a defendant's immigration status is at stake and the law is "succinct, clear, and explicit," counsel must affirmatively inform the defendant a conviction will result in removal from the country; where the law is not as clear, counsel must advise the defendant of the "risk of adverse immigration consequences" from a guilty plea. Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010); see also Gaitan, 209 N.J. at 356

12

(favorably citing the United States Supreme Court's holding in <u>Padilla</u>). An attorney need not use any "magic words" to convey the risk or likelihood of removal. <u>State v. Blake</u>, 444 N.J. Super. 285, 299 (App. Div. 2016).

Based on our de novo review, we are satisfied the PCR judge correctly applied the <u>Strickland</u>/<u>Fritz</u> test in rejecting defendant's claim of ineffective assistance of counsel. Defendant failed to establish the legal services provided by his retained counsel or his public defender were deficient and resulted in prejudice. Additionally, defendant failed to claim that he would have rejected the plea offer and proceeded to trial but for his attorney's alleged errors.

Defendant's argument that his plea attorney was ineffective in failing to advise him of the potential immigration consequences associated with a guilty plea is belied by the record. Defendant indicated on the plea form and during the plea hearing that he understood a guilty plea could result in his removal from the United States.

Further, defendant admitted he discussed the potential immigration consequences with his plea counsel. In fact, plea counsel told the judge he specifically advised defendant "he could still be deported" and defendant should "assume" he would be deported if he pleaded guilty.

A-1478-24

We next address defendant's ineffective assistance of counsel claim based on his private attorney's failure to investigate a possible self-defense theory. Defendant argues such an investigation could have supported an argument at sentencing for application of mitigating factors three, four, and five. Additionally, defendant claims his public defender was ineffective in failing to argue for mitigating factor eleven at sentencing. We disagree.

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. To be successful, ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Although he asserts private counsel should have pursued various pretrial motions that could have established grounds for certain mitigating factors at sentencing, defendant failed to offer any certifications or affidavits that such pretrial motions would have had merit.

Moreover, the State's evidence against defendant, namely the surveillance video footage, failed to corroborate defendant's self-defense theory. In his PCR petition, defendant did not offer any certifications or affidavits in support of his self-defense claim. Nor did defendant present any contrary evidence refuting

A-1478-24

the State's evidence. Defendant failed to meet his burden under <u>Strickland</u> to show a reasonable likelihood that his attorney's decision not to pursue a self-defense theory constituted ineffective assistance of counsel.

We also reject defendant's argument regarding his sentencing counsel's failure to argue for various mitigating factors. Defendant's arguments are premised on nothing more than bare assertions. Because defendant's contentions are unsupported by any evidence in the record, defendant fails to establish a prima facie case of ineffective assistance of counsel. <u>Cummings</u>, 321 N.J. Super. at 171. We discern no error in the judge's rejection of this argument because defendant's sentencing counsel was not required to raise mitigating factors unsupported by evidence in the record. Moreover, even though not adopted by the judge, we note counsel appropriately argued defendant's limited formal education, advanced age, and remorse constituted valid non-statutory mitigating factors. <u>State v. Rice</u>, 425 N.J. Super. 375, 381 (App. Div. 2012) ("Although our sentencing statute lists only thirteen mitigating factors, we have recognized the court's ability to use non-statutory mitigating factors in imposing a sentence.")

We also reject defendant's argument that the judge erred in failing to conduct an evidentiary hearing. A PCR petitioner is not automatically entitled

to an evidentiary hearing. Porter, 216 N.J. at 355. Rule 3:22-10(b) provides a court should hold an evidentiary hearing on a PCR petition only if the defendant establishes a prima facie case in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief." See also Porter, 216 N.J. at 354. "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

Defendant did not meet the standard required to demonstrate his entitlement to an evidentiary hearing because he did not establish a prima facie case for ineffective assistance of counsel. Therefore, the PCR judge did not abuse his discretion by deciding defendant's petition absent an evidentiary hearing.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division

16